STATE OF WEST VIRGINIA

*v.*

FRANKIE LEWIS THOMAS

(No. 13358)

Submitted February 5, 1974.    Decided March 19, 1974.

644

*Hudgins, Coulling & Brewster, Harold D. Brewster, Jr.,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *E. Leslie Hoffman, III,* Assistant Attorney General, for defendant in error.

HADEN, JUSTICE:

On a trial record virtually barren of objection, Frankie Lewis Thomas, an indigent, was convicted of the crime of breaking and entering in a jury trial conducted by the Intermediate Court of Mercer County, West Virginia. He was sentenced to an indeterminate term in the penitentiary for a period of one to ten years, with a further recommendation from the court that he serve a minimum of five years. He appeals from a final order of the Circuit Court of Mercer County, denying his petition for appeal from the intermediate court of that county.

Thomas' recently appointed appellate counsel seeks a new trial for the reasons that the appellant was convicted through the introduction of incompetent evidence of the crime. The alleged incompetence of the questioned evidence occurred by reason of its seizure by the State as a result of an unconstitutional search incident to an unlawful arrest and because the defendant was cross-examined regarding charges and convictions of other crimes irrelevant to the crime charged in the indictment. Defendant was also questioned regarding criminal

offenses committed by him allegedly occurring while he was a juvenile; this latter evidence being allegedly incompetent by reason of an alleged violation of statute, Code 1931, 49-7-3, as amended. Further, appellate counsel urges that by reason of the introduction of the illegally obtained and incompetent evidence against the defendant, its admission into evidence violated his constitutional rights and its cumulative effect denied him a fair trial, which require that his conviction be voided. In that the evidence assailed, which allegedly resulted in defendant being denied a fair trial, was introduced almost wholly without objection of trial counsel, this Court is also presented with the question of whether defendant received the benefit of effective assistance of counsel as required by the West Virginia and United States Constitutions. As a supplemental ground, defendant believes he is entitled to a reversal and an acquittal because all the evidence introduced against him was insufficient to justify a conviction of the crime charged.

The defendant's ultimate conviction resulted from events occurring when he was arrested during the early morning hours of February 10, 1971, by municipal police officers in Bluefield, West Virginia. Just prior to this arrest of Thomas, the officers had been on nightly patrol when they came upon an attempted break-in at the Commercial Printing Company on Commerce Street in Bluefield. Snow had fallen at the scene and there were observable footprints leading from the door of the printing house which were followed by the officers for some distance into a parking lot beside a theater building where they terminated. Having lost the trail, the officers proceeded to cruise the surrounding area of the Town of Bluefield in their patrol car. Sometime later, they observed Thomas who was carrying a green plastic bag departing the front entrance of the Matz Hotel building. One of the officers who knew him called to Thomas, and he stopped to await their approach.

Both policemen observed that Thomas had been drinking and they placed him under arrest for intoxication. The trial testimony of the officers demonstrated, however, that the detention and arrest of Thomas for intoxication was a pretext to enable them to question and search Thomas. The officers testified that the defendant was not at the time of the arrest intoxicated to the point that they could have sustained a drinking charge against him.

After detaining Thomas, the officers took the green plastic bag from him and examined its contents. They gave conflicting reasons to support their search of Thomas. One officer indicated their was a small hole in the bag and that a corner of a tape player was protruding from the hole. The other said that Thomas had consented to the search. Thomas vehemently denied giving the officers consent either to look into the bag or to take it from him. The search was conducted without a warrant.

The fruits of the search revealed three tape players and a tape cartridge with Montgomery Ward stickers affixed to them. Upon discovery of this evidence, the officers radioed other police officers and directed them to the Montgomery Ward store on a nearby street. There, the other officers discovered a successful breaking and entering. Thomas was then taken by the officers to the Montgomery Ward store. He was then advised of his rights and placed under arrest on the charge of possessing stolen property.

On April 6, 1971, he was indicted for breaking and entering the Montgomery Ward storeroom, and counsel was appointed to represent him at trial.

In the absence of objection or a motion to suppress by defense counsel, the prosecution introduced the evidence obtained by the initial "arrest" of Thomas, and the search of his plastic bag.

The State also introduced extensive testimony by the police officers that the footprints discovered in the snow at the Commercial Printing House, and also at the entrance to the Montgomery Ward store, were footprints of the defendant Thomas. Measurements of the footprints made at the scene of the break-ins indicated that the prints measured four by eleven and one-half inches. Defense counsel buttressed the testimony of the police officer by demanding and receiving permission of the court to measure the defendant's shoes during trial. The results of this demonstration coincidently revealed that Thomas' shoes were four by eleven and one-half inches in size.

Additional State evidence proved that a Montgomery Ward smock, also missing from the store, was found at the rear of the Matz Hotel building near garbage bins containing green plastic garbage bags.

Counsel did not move for a directed verdict at the close of the State's case.

Also without objection of defense counsel, Thomas, upon taking the stand in his own defense, was cross-examined extensively as to previous convictions and charges lodged against him involving collateral crimes. One example of such testimony which caught the particular attention of this Court, is as follows:

> "Q. (Defense counsel) was asking you about your clothes. You have got several pairs of shoes and several pairs of boots. You have got a lot of pants, too? Trousers?
>
> "A. I have a complete wardrobe.
>
> "Q. Yes, you had a complete wardrobe. Twelve pairs of them that belonged to Effron's Army and Navy Store, didn't—
>
> "A. No.

"Q. When you got arrested?

"A. No.

"Q. Your dad brought them over and gave them to the police, didn't he?

"A. I don't know nothing about them.

"Q. You are charged in this Court for breaking into Effron's Army and Navy Store, aren't you?

"A. I am charged with one thing as I know of."

No objection was made to the introduction of the above testimony which related to an altogether separate charge on an occurrence at another place and time.

In fact, defense counsel only lodged objections with the court twice during the entire course of the trial. The first objection relating to the racial composition of the jury panel, was abandoned. The second did concern the introduction on cross-examination of defendant's previous convictions for forgery, other felonies and misdemeanors, on the ground that some may have occurred while he was a juvenile. Counsel objected that such convictions, if they occurred when the defendant was a juvenile, violated Code 1931, 49-7-3, as amended, prohibiting evidence of the disposition of juvenile proceedings from being used against the defendant. After the prosecutor responded that forgery was a felony and a conviction of that crime meant that Thomas had been tried as an adult rather than a juvenile, the court overruled the objection.

When the jury returned its verdict against the defendant, his counsel moved, without the assignment of grounds, that the jury verdict be set aside and that Thomas be granted a new trial. The trial court overruled the motion and sentenced the defendant.

After trial, defendant requested his counsel to perfect an appeal of the conviction. Counsel took no further

action in Thomas' behalf. Subsequently, this Court, on the *pro se* petition of Thomas, granted a writ of *habeas corpus* returnable to the Intermediate Court of Mercer County. There, the relator was awarded the writ but that court, apprehending no errors in the trial, resentenced the petitioner to the same term and on the same conditions as contained in the judgment of April 15, 1971. The legal effect of the resentencing order resulted in the re-commencement of a new appeal period for Thomas. The sentencing court also appointed Thomas' present counsel to represent him in the prosecution of this appeal.

As to the contention that Thomas is entitled to a reversal and a judgment of acquittal because the verdict was not supported by the evidence introduced, we must reject it as having no merit. There was overly ample evidence introduced into the record which supports a conviction for breaking and entering. The jury, where there were conflicts in the testimony, resolved those conflicts in favor of the State. See, *State v. Mahramus,* 157 W.Va. 175, 200 S.E.2d 357 (1973); *State v. West,* 153 W.Va. 325, 168 S.E.2d 716 (1969); *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850 (1967); *State v. Etchell,* 147 W.Va. 338, 127 S.E.2d 609 (1962); *State v. Winans,* 100 W.Va. 418, 130 S.E. 607 (1925).

Regarding the admission upon cross-examination of evidence showing prior convictions of the defendant at a time when he may have been subject to the jurisdiction of a juvenile rather than a criminal court, it, as well, must be rejected. There is no support in the record for a con-clusion that the State attempted to introduce proscribed evidence from *juvenile proceedings* protected by *Code* 1931, 49-7-3, as amended. That statute does not prohibit the introduction of evidence relating to former convictions of a defendant in the criminal courts of this or another state.

On this appeal, Thomas' newly appointed counsel has ably contended for his rights. Present counsel and the

attorney general for the State have very adequately briefed the issues presented on appeal. Nevertheless, this Court is confronted with the problem of reviewing obvious errors which were assigned for the first time on appeal and which are not preserved in the record of the trial below. We must proceed with the recognition that the general rule is that objections not shown to have been made in the trial court cannot be considered in the appellate court. *State v. Mahramus, supra; State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955). With a very real awareness of the import of the rule, we are compelled by the facts of this case to discuss the circumstances of Thomas' arrest, the admission into evidence of the items acquired from him by the officers' search, the admission into evidence of collateral charges and crimes against Thomas, and the effect of this evidence and other circumstances at trial upon Thomas' ultimate conviction.

Thomas was arrested without a warrant on a statutory misdemeanor charge of intoxication. See *Code* 1931, 60-6-9(1), as amended. The testimony given by the officers negatives circumstances which would demonstrate either a lawful arrest or a probable cause to search. Their testimony was that they stopped Thomas on the pretext of arresting him for intoxication but knew he was not intoxicated to the point that they could make the charge stick. They also acknowledged that but for the fruits of the search of Thomas' garbage bag, they would have been unaware of the successful breaking and entering and theft at the Montgomery Ward store. Rather remarkably, neither officer testified that they had reason to stop Thomas because of any suspicions they entertained that he might have attempted to break into the Commercial Printing House, which was the crime under active investigation by them. The record is absolutely silent on that point and neither officer attempts to justify the arrest or search on that basis.

A municipal police officer has no authority at common law or by statute to make a warrantless arrest of a person

who does not commit a misdemeanor in his presence. A pretext arrest for the misdemeanor of intoxication with foreknowledge that the charge could not be sustained against the suspect is an unlawful arrest. See *Code* 1931, 8-14-3, as amended. And the mere suspicion that a misdemeanor offense has been previously committed or will be committed by a person does not furnish probable cause to an officer who makes a warrantless arrest. *State v. Lutz*, 85 W.Va. 303, 101 S.E. 434 (1919). The initial arrest of Thomas was patently and obviously unlawful.

Regardless of the foregoing, we must consider whether the evidence acquired from Thomas was admissible against him in trial to support the charge of breaking and entering the Montgomery Ward store.

The common-law rule was that the admissibility of evidence is not affected by the illegality of the means by which it is obtained unless its admission will violate a constitutional guarantee of the person against whom its admission is sought. *State v. Wills*, 91 W.Va. 659, 114 S.E. 261, 24 A.L.R. 1398 (1922). This Court has recently reaffirmed that the unlawfulness of a seizure or arrest and a subsequent search is the constitutional equivalent of an unreasonable search and seizure:

> "In interpreting Section 6 of Article III of the Constitution of West Virginia, this Court held that unlawful searches and seizures are unreasonable within the meaning of this Section forbidding unreasonable searches and seizures." Sprouse, J., *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631, 634 (1973).

Further, we recognized and held in a similar case:

> "Except where authorized by law as incident to a lawful arrest, any search of a person or his dwelling on mere suspicion and the seizure of any article found as a result thereof, without an arrest warrant or a search warrant, is an unlawful search and seizure in violation of Section 6,

Article III of the Constitution of West Virginia."
Syllabus Point 1, *State v. Smith,* 156 W.Va. 385,
193 S.E.2d 550 (1972).

Consequently, evidence obtained by reason of a search
after an unlawful arrest cannot be used as evidence
against the accused upon his trial. *State v. Duvernoy,
supra; State v. Massie,* 95 W.Va. 233, 120 S.E. 514 (1923);
*State v. Slat,* 98 W.Va. 448, 127 S.E. 191 (1925); *State v.
Andrews,* 91 W.Va. 720, 114 S.E. 257 (1922); *State v. Wills,
supra; Davis v. Mississippi,* 394 U.S. 721, 89 S. Ct. 1394, 22
L. Ed. 2d 676 (1969); *Henry v. United States,* 361 U.S. 98,
80 S. Ct. 168, 4 L. Ed. 2d 134 (1959); *Weeks v. United
States,* 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914).

The officers in this case also relied upon the fact that
part of the evidence was in plain view to them as sub-
stantiating the lawfulness of their search. The so-called
"plain view" exception may not be relied upon to sustain
the admission of contraband property inadvertently
discovered unless the officer was lawfully searching with
probable cause at the time. *State v. Duvernoy, supra;
Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022,
29 L. Ed. 2d 564 (1971); *Vale v. Louisiana,* 399 U.S. 30,
90 S. Ct. 1969, 26 L. Ed. 2d 409 (1971); *Preston v. United
States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964).

Although Thomas vehemently denied his voluntary
submission to a search, the officers also claimed that
their search of Thomas was made lawful by his consent.
Evidence acquired by consent is admissible against the
accused in trial. *State v. Angel,* 154 W.Va. 615, 177 S.E.2d
562 (1970). But that principle does not apply where the
consent is not voluntary. Mere submission to authority is
insufficient to support a "consent" search. As the United
States Supreme Court said in *Bumper v. North Carolina,*
391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968):.

"There can be no consent to a search where
there is coercion, albeit colorably lawful coercion,
as where a law enforcement officer claims
authority to search a home under a warrant,

thereby announcing in effect that the occupant has no right to resist the search." (Headnote 9, *id.,* at Page 798 of the Law Edition Report.)

We also approve and adopt the reasoning of the Georgia Court in a recent decision relating to an alleged consent search:

> " 'A prisoner in police custody by reason of an illegal arrest [or any other form of detention, overt or subtle] is in no position to refuse to comply with the demands of the officer in whose custody he is placed whether such demand is couched in the language of a polite request or a direct order.' " *Holtzendorf v. State,* 125 Ga. App. 747, 188 S.E.2d 879, 882 (1972).

Under the facts of this case, we cannot conclude that the consent alleged by the officers was voluntarily given since the defendant was under detention or arrest without probable cause. This Court has previously held that as to lawfulness of the search, it is of no moment whether the formal arrest occurred before or after the search. In a case relating to the admission of evidence of the possession of an unlawful pistol by the accused, the Court held in *State v. Massie, supra,* at Page 238 of the West Virginia Report:

> "Whether we consider the arrest as made before the search or after the finding of the pistol, the result is the same. The officer had no information that defendant had a pistol."

The contraband evidence admitted in trial against Thomas to prove his guilt of the crime of breaking and entering was seized as a result of an unlawful arrest. It was not made admissible by the officers' faulty claim of "plain view" or "consent." In summary, an arrest cannot be justified by the fruits of an illegal search nor can a search be justified by what it produces. *State v. Duvernoy, supra; State v. Massie, supra; Sibron v. New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968).

Thomas' appellate counsel also claims that his client was unquestionably prejudiced by the introduction of

extensive evidence against him of related crimes and charges. The record demonstrates that an unusually voluminous amount of such evidence was introduced against the accused.

It is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial. *State v. Hudson,* 128 W.Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265 (1946).

The *rationale* for the general rule is that when a person is placed on trial for the commission of a particular crime he is to be convicted, if at all, on evidence showing his guilt of the specific offense charged in the indictment against him.

The *purpose* of the rule is to forbid and prevent the conviction of an accused for one crime by the use of evidence that he has committed other crimes, and to preclude the inference that because he had committed other crimes previously, he was more liable to commit the crime for which he is presently indicted and being tried.

It is said in 29 AM. JUR. 2d, *Evidence* § 320 (1967):

> "This rule is one of the distinguishing features of our common-law jurisprudence, differing from that prevailing in civil law jurisdictions, and arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence."

The difficulty with the application of the general rule is that there are a number of well-recognized exceptions to and limitations upon the general rule "Indeed, it has been said that there are so many exceptions to the rule that it is difficult to determine which is more extensive

—the rule or its acknowledged exceptions." 29 Am. Jur. 2d, *Evidence* § 321 (1967), citing *Fairbanks v. United States,* 96 App.D.C. 345, 226 F.2d 251 (1955).

Concisely summarizing the exceptions, Rule 311 of the *Model Code of Evidence,* American Law Institute (1942) provides that:

> "Subject to Rule 306 (which relates to the admissibility of evidence concerning a person's character as tending to prove his conduct), evidence that a person committed a crime . . . on a specified occasion is inadmissible as tending to prove that he committed a crime . . . on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime . . . or to commit crimes . . . generally."

The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial. *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286 (1901); *State v. Hudson, supra; State v. Geene,* 122 W.Va. 51, 7 S.E.2d 90 (1940). But proof of another distinct substantive crime is never admissible unless there is some *legal* connection between the two, upon which it can be said that one tends to establish the other or some essential fact in issue. *State v. Adkins,* 109 W.Va. 579, 155 S.E. 669 (1930). However, the mere fact that such evidence tends to prove that the accused committed other crimes does not render it inadmissible. *State v. Hudson, supra.* Such evidence will be considered strictly upon the ground of its relevancy to the purpose for which it is sought to be introduced. Ostensibly, if it satisfies the legal requirements of the purposes recognized in the exceptions previously stated,

the introduction of the evidence of the collateral crime is competent. The accused who takes the stand in his own defense shall be deemed to have waived his privilege of not giving evidence against himself *only as to evidence as is relevant to the charge against him. State v. Simmons,* 148 W.Va. 340, 135 S.E.2d 252 (1964).

The specific problem occurs in this case not with the arguable admissibility of the evidence of collateral crimes and charges under one of the recognized exceptions, but rather, whether the prosecutor prejudiced the accused by the excessive employment or "shotgunning" of such evidence against the accused. This is a definite cause for concern in reviewing courts. See the *caveat* of Senior Circuit Judge Sobeloff:

> "A prudent prosecutor limits himself to what is needed to prove the charge in the indictment. In the process of proving the charge, other offenses may sometimes come to light incidentally, but when the prosecution devotes excessive trial time to this type of 'background' material, it runs the risk of trespassing into the impermissible area and jeopardizing any resulting conviction." *United States v. Mastrototaro,* 455 F.2d 802, 804 (4th Cir. 1972).

Certainly, the indiscriminate receipt of such evidence in volume and scope can predispose the minds of the jurors to believe the accused guilty of the specific crime by showing him guilty or charged with other crimes. Moreover, the admissibility of the collateral crimes raises collateral issues which compel the defendant to meet charges of which the indictment gives him no information; which confuse his strategy of defense; and which raise such a variety of issues that the jury's attention is diverted from the charge immediately before it. This result, obviously prejudicial, is to be avoided by prompt objection on the part of the defense and close attention and control by the trial court to insure that an accused receives a fair trial when he is being subjected to zealous prosecution.

The excessive zeal of the prosecutor in introducing evidence of collateral crimes can and has affected the accused's right to a fair trial. This Court recently spoke to this issue in the case of *State v. McArdle,* 156 W.Va. 409, 194 S.E.2d 174 (1973). Speaking through Justice Caplan, we held, as respects the method of introduction and scope of introduction of collateral crimes evidence, that its effect could definitely be prejudicial: ". . . such practice constitutes a flagrant violation of the fundamental principles of fairness." *Id.,* at Page 179 of the South Eastern Reporter.

The control of the scope, latitude and method of introduction of arguably admissible evidence of collateral crimes and charges is, of course, vested in the trial court. Motions to introduce and motions and objections for exclusion are addressed to the sound discretion of the court. Again, the *Model Code of Evidence,* A.L.I., in Rule 303, sets forth the criteria for a trial court in the exercise of its discretion:

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

\* \* \*

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

Likewise, the prosecution should be cognizant of the requirements of best evidence as respects the introduction of a conviction or charge of another crime for a purpose deemed relevant by the court. It is to be noted here that Thomas was confronted with a barrage of questions relating to charges and convictions of former crimes,— some while he was a juvenile and some while he was an adult—, without any proof of those charges. He was compelled to respond by denial or by acknowledgment of

the truth of the charges without being presented with documentary evidence demonstrating the criminal charges and convictions. See, *Model Code of Evidence, id.,* Rules 517, 521, 601, 602, suggesting official documentary proof of criminal conduct. This Court believes these suggestions to be salutary and trusts their implementation will do much to protect an accused. The accused should be scrupulously protected in his right to a fair trial. Likewise, the State should be permitted to introduce evidence of collateral crimes and charges against the accused, if such evidence is demonstrably relevant and legally connected with the charge for which the accused is being tried.

Were we to apply the rules of the foregoing discussion in regard to the admission of collateral crimes against an accused in trial, we would be disposed to say that the scope and latitude given the prosecutor in the introduction of evidence denied the defendant a fair trial. However, again we note, the defendant did not object to the method or extent of such evidence introduced against him. We are not of a mind to say that the trial court abused its discretion when its discretion was not questioned.

It becomes obvious that this Court believes the appellant Thomas to have been convicted on the use and introduction of incompetent and unconstitutionally seized evidence which require a reversal on this appeal. We come full circle. Egregious errors are assigned on appeal and the record demonstrates that accused was convicted by incompetent evidence. The trial counsel appointed to defend the accused did not, however, bring these matters to the attention of the trial court at a time when error could have been prevented. As an appellate court, we are mindful that we are reviewing errors not ruled upon by the trial court.

> "The proceedings of the lower court are presumed to be regular, unless the contrary affirmatively appears upon the record, and objections taken for the first time in the appellate court will not be regarded *in any matter of which the court had*

*jurisdiction* or which might have been remedied in the trial court if objected to there." 1B M.J., *Appeal and Error* § 103 (1967). (Emphasis supplied.)

West Virginia is firmly committed to this general rule and has only deviated from it on few occasions, and then only in extraordinary situations.

Exceptions to the general rule can and do arise in proceedings involving deprivation of life or liberty. However characterized, all courts when confronted with a situation involving the fundamental personal rights of an individual, have considered unassigned errors, if meritorious and prejudicial, as jurisdictional, or have noticed them as "plain error." In either event, the rule is fashioned and applied to meet the ends of justice or to prevent the invasion of or denial of fundamental rights. 5 AM. JUR. 2d, *Appeal and Error* §§ 548, 549 (1962); *cf.* *State v. Cruikshank*, 138 W.Va. 332, 76 S.E.2d 744 (1953), overruled on other grounds, *State v. Bragg, supra.*

This Court is agreed that the fundamental error which occurred in this case was that the defendant was denied a fair trial. Why was he denied a fair trial? He did not receive the benefit of effective assistance of counsel. Trial counsel's derelictions were as follows: (1) failure to object to or move for the suppression of evidence seized incident to an unlawful arrest proscribed by Article III, Section 6 of the West Virginia Constitution, and the Fourth Amendment to the United States Constitution; (2) failure to object to the introduction of evidence of collateral crimes in a manner prejudicial to the accused; (3) failure to move for a directed verdict at the close of the State's evidence; (4) failure to assign grounds in a motion to set aside the verdict and award the defendant a new trial; and, (5) failure to file an appeal on behalf of the defendant within the time limits prescribed by law. Additionally, defense counsel inadvertently corroborated the State's case and aided in securing his client's conviction by conducting a demonstration which proved that

Thomas' shoe size matched the footprints found at the scene of the crime. These conclusions leap from the silent record and palpably demonstrate that defense counsel did not represent his client's best interest.

Normally, the question of effective assistance of counsel is not reached on a direct appeal of a criminal case. Neither counsel nor his client assert his own counsel's ineffectiveness as being a prejudicial error requiring reversal or avoiding the results of the conviction. However, the case of *State ex rel. West Virginia-Pittsburgh Coal Company v. Eno,* 135 W.Va. 473, 63 S.E.2d 845 (1951), turned on the point of effective assistance of counsel and this Court reversed a conviction of one for criminal contempt because his counsel on appeal argued successfully that the trial court forced him to trial before he had adequate time to prepare the accused's defense. Other courts, however, have been presented with the precise questions involved in this case on direct appeal, and have found it necessary to void a criminal conviction based upon ineffective assistance of counsel.

When counsel had entertained an erroneous notion of the law and consequently did not raise a defense, move to suppress evidence or call particular witnesses, the reviewing court reversed the judgment by reason of ineffective assistance. See, *e.g., People v. McDowell,* 69 Cal. 2d 737, 447 P.2d 97, 73 Cal. Rptr. 1 (1968); *People v. Welborn,* 257 Cal. App. 2d 513, 65 Cal. Rptr. 8 (1967). In *People v. Ibarra,* 60 Cal. Rptr.2d 460, 386 P.2d 487, 34 Cal. Rptr. 863 (1963), counsel failed to challenge the illegality of a search which produced heroin because he was unaware of the rule of law which allowed him to do so. The California Supreme Court found that counsel's decision reflected not judgment but rather, unawareness of a rule of law basic to the case: "A rule that reasonable preparation would have revealed." *Id.,* at Page 466 in the California Second Reporter. Accord, *People v. Coffman,* 2 Cal. App. 3d 681, 82 Cal. Rptr. 782 (1969); *In re: Williams,* 1 Cal. 3d 168, 460 P.2d 984, 81 Cal. Rptr. 784 (1939); See

also, *United States ex rel. Williams v. Brierley,* 291 F. Supp. 912 (E.D. Pa. 1968), a *habeas,* which held ineffective assistance of counsel had been rendered when counsel failed to challenge the validity of a search and the introduction of the fruits of the search into evidence against the relator.

As to the second point raised in the instant appeal, where counsel failed to challenge plainly inadmissible evidence used by the prosecution to impeach the accused testifying in his own behalf, the Court also found ineffective assistance and reversed. *Poe v. United States,* 233 F. Supp. 173 (D.C. D.C. 1964).

Although there have been numerous references to lack of effective assistance of counsel in cases before this Court, no ruling of this Court has voided a criminal conviction on the ground that counsel present, representing the accused at trial, was so ineffective so as to deprive the accused of a fair trial. The case of *State ex rel. Favors v. Tucker,* 143 W.Va. 130, 100 S.E.2d 411 .(1957), *cert. den.,* 357 U.S. 908, 78 S. Ct. 1153, 2 L. Ed. 2d 1158 (1958), recognized that ineffective assistance of counsel could void the court's jurisdiction, but refused to take that action in that particular case for the reason that counsel was not conclusively proved to have been ineffective.

There are reasons why this Court, or any appellate court, is, and should be, loath to void a conviction of an accused by reason of ineffective assistance of counsel. First, we recognize and presume that trial counsel, appointed or retained, conscientiously seek, within the limits of preparation, ability, knowledge of the law, and skill at trial, to accomplish a successful result for his client. Secondly, as this Court has previously recognized, " 'A defendant . . . is not constitutionally guaranteed such assistance of counsel as will necessarily result in his acquittal. . . .' " *State ex rel. Owens v. King,* 149 W.Va. 637, 640, 142 S.E.2d 880 (1965). Third, aside from general statements regarding the subject, this Court has not been

called upon to establish standards delienating the parameters of the constitutional right to effective assistance of counsel.

Since the landmark case of *State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964), decisions of this Court are legion on the point that the right to assistance of counsel is a fundamental right, essential to a fair trial. See, *e.g., State ex rel. Hicklin v. Boles*, 149 W.Va. 163, 139 S.E.2d 182 (1964); *State ex rel. Stumbo v. Boles*, 149 W.Va. 174, 139 S.E.2d 259 (1964); *State ex rel. Browning v. Boles*, 149 W.Va. 181, 139 S.E.2d 263 (1964); *State ex rel. Arbraugh v. Boles*, 149 W.Va. 193, 139 S.E.2d 370 (1964). Since *Gideon*, this Court has never wavered in according this basic right to an indigent accused or in voiding a trial and a conviction which occurred in the absence of counsel. But we have not defined the minimum standards of effective assistance.

The historical test for judging the relative effectiveness of counsel's assistance is that to render a judgment in a criminal trial against an accused void, counsel's efforts must have been so inadequate as to render the trial a farce and a mockery of justice. See, *e.g., Bell v. Alabama*, 367 F.2d 243 (5th Cir. 1966), *cert. den.*, 386 U.S. 916 (1967); *Nutt v. United States*, 335 F.2d 817 (10th Cir. 1964), *cert. den.*, 379 U.S. 909 (1964); *United States ex rel. Cooper v. Reincke*, 333 F.2d 608 (2d Cir. 1964), *cert. den.*, 379 U.S. 909 (1964); *Frand v. United States*, 301 F.2d 102 (10th Cir. 1962); *Cofield v. United States*, 263 F.2d 686 (9th Cir.) *reversed per curiam*, 360 U.S. 472 (1959); *Mitchell v. United States*, 259 F.2d 787 (D.C. Cir.), *cert. den.*, 358 U.S. 850 (1948); *Diggs v. Welch*, 148 F.2d 667 (D.C. Cir.), *cert. den.*, 325 U.S. 889 (1945).

Recent decisions have approached the problem from a different aspect and have compared the questioned counsel's skills with those of one possessing normal customary skill and knowledge of the law. See, *Kott v. Green*, 303 F. Supp. 821, 822 (N.D. Ohio 1968). See

generally, Finer, "Ineffective Assistance of Counsel," 58 Corn. L. Rev. 1077 (1973); Bines, "Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus," 59 Va. L. Rev. 927 (1973). This test, which has characteristics in common with the malpractice standard applied to physicians and other professions, has worth in that it provides the court with measurable indicia with which to judge and compare counsel's efforts. Using this general standard where, as often occurs, on close and arguable questions, a counsel's trial strategy results in detriment to his client rather than success, counsel's actions are to be held ineffective only if no reasonable attorney would have so acted under the circumstances of the case. Conversely, if the court determines there is any reasonable, tactical or strategic basis for counsel's conduct in the arguable situation, then such conduct is not considered ineffective. See, *State v. White,* 5 Wash. App. 283, 487 P.2d 243 (1971), *reversed,* 81 Wash. 2d 223, 500 P.2d 1242 (1972); *United States v. Garguilo,* 324 F.2d 795 (2d Cir. 1963); *Williams v. Beto,* 354 F.2d 698 (5th Cir. 1965); *In re: Ernst,* 294 F.2d 556 (3d Cir. 1961), *cert. den.,* 368 U.S. 917 (1961); *Snider v. Cunningham,* 292 F.2d 683 (4th Cir. 1961); *Bolden v. United States,* 266 F.2d 460 (D.C. Cir. 1959); *Harris v. United States,* 239 F.2d 612 (5th Cir. 1957); *State v. Fulford,* 290 Minn. 236, 187 N.W.2d 270 (1971).

In the case of *State ex rel. Burkhamer v. Adams,* 143 W.Va. 557, 103 S.E.2d 777 (1958), this Court alluded to this standard in judging counsel's actions proper:

> "True, other attorneys may have, or may not have, pursued the same course of procedure followed by counsel. That, however, is no test. . . . It can not be said with any degree of confidence that the manner of representation by counsel was not proper." *Id.,* at Page 572-73 of the West Virginia Report, Given, J.

One learned commentator urges persuasively that *Powell v. Alabama,* 287 U.S. 45 (1932), guaranteed not only the timely and operative appointment of counsel,

but also, the right to the assistance of counsel whose quality of performance does not fall below a certain minimum level. Waltz, "Inadequacy of Trial Defense Representation as a Ground of Postconviction Relief in Criminal Cases," 59 Nw. U. L. Rev. 289, 293-295 (1964). Subsequent cases bear out that conclusion. See *White v. Ragen,* 324 U.S. 760 (1945); *Glasser v. United States,* 315 U.S. 60 (1942); *Avery v. Alabama,* 308 U.S. 444 (1940); *Johnson v. Zerbst,* 304 U.S. 458 (1938).

Chief Justice Burger goes further and persuasively argues that it is high time that the American legal system reformed itself. First, he says that the canons of legal ethics and the policy of the bar associations should be revised to recognize specialties of competence within the law. This is particularly true and required in constitutional context as regards the representation of indigent defendants. Secondly, and perhaps every bit as important, the Chief Justice argues that these specialties, once recognized and once filled by persons certified as qualified by their professional colleagues, should be communicated to the public. This is needed so that those wishing to avail themselves of the high skills of our profession can do so with the assurance that they will receive the professional skills of an able criminal counsel when they seek criminal defense, rather than receive the equally skilled but useless services of a well-qualified trust, corporate or tax lawyer. See, Burger, *The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?,* 27 Fordham L. Rev. 227 (1973).

We believe this approach to be pragmatic and realistic and we cannot see how the profession would in any manner be denigrated or demeaned by a forthright recognition that some of our brethren are most skilled in a particular area of practice responsibility and to communicate this fact to the general public. Certainly this approach would tend to remove the justifiable fears of laymen who seek specialized legal services and

indigents who receive the benefit of appointed counsel without the reasonable assurance of their particular qualifications. The layman-client's present recourse is to the bland and neutral listing of lawyers in alphabetical order under the appropriate classification in the yellow pages of the phone book. Pertinent to the present case, even with the best and conscientious effort of courts and counsel, the appointment of counsel to represent indigents in criminal matters is generally rotated among members of the entire bar, regardless of their practice specialty. The low remuneration, the varying numbers of attorneys available for appointment in the geographical area, and the lack of a public defender system in this jurisdiction present a problem of magnitude for the bench and bar of this State.

With a concerned view of the problems, as well as the constitutional requirements, this Court cautiously suggests the following standards under which we will prospectively judge the assistance of counsel effectiveness.

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law.

There is an exception to the foregoing rule. If counsel's error, proven to have occurred, would not have changed the outcome of the case, it will be treated as harmless error. *Code* 1931, 58-1-2; *State v. Bragg, supra.* But where constitutional errors are involved, the United States Supreme Court has held that its test and not the test of the state controls in determining prejudice or the lack thereof. *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963). The federal standard

in regard to harmless constitutional error was held in *Chapman* to be that the conviction must fall unless it can be shown that the error was harmless beyond a reasonable doubt. In *Fahy,* it was stated almost as strongly: the conviction must be reversed unless there is no reasonable possibility that the violation contributed to the conviction.

Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

As in *habeas corpus* proceedings, one who charges on appeal that his counsel at trial has been ineffective and that this ineffectiveness resulted in his conviction, must prove his allegation by a preponderance of the evidence. See, *State ex rel. Scott v. Boles,* 150 W.Va. 453, 147 S.E.2d 486 (1966).

We adopt the above standards and caution that they are to be regarded as developmental and prospective in nature.

We reiterate the previous recognition of this Court that a defendant is not constitutionally guaranteed such assistance of counsel as will necessarily result in his acquittal. *State ex rel. Owens v. King, supra; State ex rel. Robison v. Boles,* 149 W.Va. 516, 142 S.E.2d 55 (1965); *State ex rel. Clark v. Adams,* 144 W.Va. 771, 111 S.E.2d 336, *cert.den.,* 366 U.S. 807, 80 S. Ct. 1242, 4 L. Ed. 2d 1149 (1960); *Ex parte: Farmer,* 123 W.Va. 304, 14 S.E.2d 910 (1941). Further, we do not, by the articulation of the above rules, invite frivolous *habeas* petitions or unfounded applications for writs of error.

Judged by the foregoing standards, we reluctantly hold that the appellant's appointed trial counsel did not satisfy the requirements of Article III, Section 14 of the West Virginia Constitution, and the Sixth Amendment to the United States Constitution. We do so with no intended

disparagement of the professional qualifications of trial counsel in the general practice of law.

As we have previously held that a conviction of an indigent accused in the absence of assistance of counsel is void, see *State ex rel. Mays v. Boles, supra; State ex rel. Widmyer v. Boles,* 150 W.Va. 109, 144 S.E.2d 322 (1965); *State ex rel. Curtis v. Boles,* 150 W.Va. 79, 143 S.E.2d 824 (1965); *State ex rel. Browning v. Boles,* 149 W.Va. 181, 139 S.E.2d 263 (1964), we are logically directed to hold that a conviction of an indigent accused without the adequate assistance of counsel is also void. By reason of the ineffective assistance of counsel, the trial court lacked jurisdiction to enter a valid judgment against the defendant.

The judgment of the Circuit Court of Mercer County is reversed and this case is remanded to the Intermediate Court of Mercer County so that the appellant may be awarded a new trial.

*Reversed and remanded.*