# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Thomas Grantham, Jr.,**
**Petitioner Below, Petitioner**

**vs)  No. 16-0452** (Berkeley County 14-C-405)

**David Ballard, Warden,**
**Mount Olive Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**March 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Thomas Grantham, Jr., by counsel S. Andrew Arnold and J. Daniel Kirkland, appeals two orders of the Circuit Court of Berkeley County. The first order, entered June 25, 2015, summarily dismissed four of petitioner's five grounds for post-conviction habeas corpus relief. The second order, entered April 13, 2016, denied petitioner's fifth and final ground for habeas relief. Respondent David Ballard, Warden, Mount Olive Correctional Center, by counsel Christopher C. Quasebarth, filed a response in support of the circuit court's orders and a supplemental appendix. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the relevant standards of review, the parties' briefs in both appeals, and the record on appeal, the Court finds that a memorandum decision under Rule 21 of the Rules of Appellate Procedure is appropriate.

On April 23, 2011, Petitioner Thomas Grantham, Jr. and James Cross argued with Jacques Taylor and Andre Jackson in a bar. Thereafter, petitioner and Mr. Cross followed Mr. Taylor and Mr. Jackson to a gas station. There, petitioner stabbed Mr. Taylor while Mr. Cross stabbed Mr. Jackson as the two victims sat in their car. Mr. Taylor survived the attack; Mr. Jackson died as a result of his injuries. In October of 2011, petitioner and Mr. Cross (hereinafter the "co-defendant") were jointly indicted and charged with first-degree murder, attempted murder in the second degree, malicious assault, and conspiracy to commit murder.

Petitioner and his co-defendant's joint trial commenced on June 12, 2012. During voir dire, no potential juror responded to the question: "Are any of you related by blood or marriage to the accused?" However, potential juror Victor Holmes testified that he had been a teacher at Martinsburg High School and had taught defense counsel Craig Manford and potential witness George Smartwood. However, Mr. Holmes also testified that this former teacher/student relationship would not affect his impartiality as a juror. Thereafter, the following exchange

1

occurred during a voir dire "sidebar" between Mr. Holmes, the trial court, the parties' counsel, and petitioner:

> THE COURT: One of the [potential] jurors wants to speak with us so we'll bring [him] up. Mr. Holmes.
>
> [Potential Juror Holmes present at the bench.]
>
> MR. HOLMES: I'm not sure if I know [petitioner Thomas Grantham, Jr.] as a student or not. I can't say for sure
>
> THE COURT: Okay.
>
> MR. HOLMES: I just wanted you to know that.
>
> THE COURT: You don't have any recollection, but I don't know, let me see, you and I have been in our respective businesses for a long time and we have a lot of people pass in front of us that we may or may not remember so that's fair to say that you may or may not have [petitioner] as a student, but if you had and if as the trial goes on there's any remembrances, could you put everything out of your mind and sit as a fair juror in this case?
>
> MR. HOLMES: Yes, I have no problem with that. I just want you to know there's a possibility.
>
> [. . .]
>
> DEFENSE COUNSEL: I have one quick question. Is—You're trying to remember whether you know [petitioner] as a student, correct?
>
> MR. HOLMES: Uh-huh.
>
> DEFENSE COUNSEL: Do you have any recollection of any disciplinary action of [petitioner] that may have brought that to mind?
>
> MR. HOLMES: No. Just the name. Just trying—
>
> THE COURT: Well, it's a—[the State] has a question.
>
> THE STATE: [Mr. Holmes], do you know Junior Grantham?
>
> MR. HOLMES: Junior?
>
> THE STATE: [Junior Grantham] used to coach at Jefferson—at Jefferson High School, are you connecting [petitioner Thomas Grantham] with [coach] Junior Grantham?

2

MR. HOLMES: I can't really say. The name just Thomas Grantham because I know—can I ask a question?

THE COURT: Sure.

MR. HOLMES: Where is he from—originally from?

THE COURT: I don't know.

DEFENSE COUNSEL: Martinsburg.

THE COURT: Did you go to Martinsburg High?

MR. HOLMES: Yeah.

THE COURT: What year?

PETITIONER: Graduated in '94.

THE COURT:'94.

MR. HOLMES: I guess that's what—

THE COURT: And you [Mr. Holmes] were still there in '94?

MR. HOLMES: Yeah.

THE COURT: But that would—what you're telling me is you have no independent recollection of [petitioner]?

MR. HOLMES: No.

THE COURT: And even if you did there is nothing there that would influence how you would decide this case?

MR. HOLMES: No. I just want to make sure.

THE COURT: Appreciate that. . . .

Thereafter, Mr. Holmes was impaneled as a juror ("Juror Holmes") and trial commenced. Following the close of the State's case-in-chief, petitioner's trial counsel notified the court of an alibi witness. The court allowed the witness, but noted that the State's witnesses had clearly identified petitioner as being at the scene of the stabbings and as one of the assailants. The alibi witness testified that he saw petitioner elsewhere at the time the crimes were committed, but was impeached on cross-examination. On June 18, 2012, the jury found petitioner guilty of second-degree murder, attempted murder, and malicious assault, but acquitted him of conspiracy to

3

commit murder. The circuit court sentenced petitioner to a net effective sentence of forty-three to fifty-three years in prison. This Court later affirmed petitioner's convictions. *See State v. Grantham*, No. 12-1293, 2013 WV 6152080 (W.Va. Nov. 22, 2013). Sometime thereafter, petitioner claimed he learned that Juror Holmes was petitioner's father's first cousin.

On November 5, 2014, petitioner, with the assistance of counsel, filed an amended habeas petition in which he alleged that his father and Juror Holmes were first cousins. By order entered June 25, 2015, the habeas court summarily dismissed four of petitioner's five grounds for relief (Grounds 1, 3, 4, and 5)[1] pursuant to Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia. However, the habeas court required the State to respond to the sole remaining ground for relief, Ground 2, which alleged that petitioner was denied his right to an impartial jury due to the inclusion of Juror Holmes on the jury.

At petitioner's January 19, 2016, omnibus evidentiary hearing, petitioner called both his father, Thomas A. Grantham, Sr., and Juror Holmes. Petitioner's father testified (1) that his father, Stanford Grantham, was the brother of Juror Holmes's mother, Ethel Grantham and, therefore, he and Juror Holmes were first cousins; (2) that he grew up with Juror Holmes in the early 1980's; (3) that he "beat [up] pretty bad" Juror Holmes's brother and, as a result, Juror Holmes's brother needed "a plate in his head"; and (4) that there are many people named "Grantham" in the area. Conversely, Juror Holmes testified (1) that he was not related to petitioner's father given that his mother, Ethel Grantham, had only two brothers and neither of them was Stanford Grantham; (2) that he was acquainted with petitioner's father because they had attended school together; (3) that his brother, who was twelve years older than he, did have a steel plate in his head, but he had no idea why his brother had the steel plate in his head; (4) that he was unaware of any fight between his brother and petitioner's father; and (5) that there were many "Granthams" in the area. Petitioner's habeas counsel then asked Juror Holmes the following question:

> HABEAS COUNSEL: Was it ever brought to your attention after trial that you might have been related to [petitioner]?
>
> JUROR HOLMES: No. As a matter of fact, when the jury was being picked I asked for a sidebar. And I talk[ed] to the judge. And I told him – I said, I have taught school. And I said, my understanding is [petitioner] went to Martinsburg High School. And I don't know if it was during that time or what you have. *And I also told that judge that at that particular time, his name was the same as my mother's maiden name. I said we're not related.* I said but I just wanted you folks to know. I said I didn't want to be blindsided by this. So I asked for a sidebar, and I told that judge and both lawyers at that time.

---

[1] The habeas court dismissed ground three (violation of due process where the trial denied petitioner's motion to sever his trial from his co-defendant's trial) and ground four (violation of due process where the trial court gave an improper "concerted action" instruction) on the basis that both issues had been fully adjudicated in petitioner's direct appeal. The habeas court dismissed ground five (cumulative error) on the basis that it was the only remaining ground for relief.

(Emphasis added.) Despite this testimony, Juror Holmes did not state during the voir dire sidebar that his mother and/or some of his ten siblings had the same last name as petitioner or that he and petitioner were "not related."

Thereafter, petitioner moved to reopen the evidentiary hearing to address Juror Holmes's testimony. In response, the habeas court, by order entered March 2, 2016, permitted limited supplementation of the record and noted that it had supplemented the record with Stanford Grantham's and Ethel Grantham's obituaries, which tended to show that the two were unrelated. The order further provided that "if [petitioner] has direct documentary evidence that [Juror Holmes] and [petitioner] are related in fact, now would be a good time to get this into the record." Without objection, petitioner responded by supplementing the record with a family history that showed that his father and Juror Holmes were not first cousins, but were instead, third cousins who shared common great, great grandparents.

By order entered April 5, 2016, the habeas court denied petitioner's amended habeas petition and found that Juror Holmes's statement—that he was not petitioner's father's *first* cousin—was true by a preponderance of the evidence. As for petitioner's claim that bias resulted from the 'third cousin" relationship between his father and Juror Holmes, the habeas court found that no reasonable person should have been expected to know of such a distant relationship; and that petitioner failed to prove that Juror Holmes knew of any familial relationship between himself and petitioner's father or that Juror Holmes lied to the court. Regarding the alleged fight between petitioner's father and Juror Holmes's brother, the habeas court highlighted that petitioner adduced no evidence, such as medical records or eyewitness accounts, that such a fight occurred. The habeas court concluded that petitioner failed to prove that Juror Holmes was biased or prejudiced against petitioner and, resultingly, failed to prove that the jury was tainted by bias or prejudice.

Petitioner now appeals the habeas court's order. We have said,

> "[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride,* 226 W.Va. 375, 701 S.E.2d 97 (2009). We have also said, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 467, 194 S.E.2d 657, 658 (1973).

Petitioner raises three assignments of error on appeal. Petitioner first argues that the habeas court violated his due process rights and its ethical duty by referencing Stanford Grantham's and Ethel Grantham's obituaries and by placing them in the record for the parties to review. Given the particular facts of this case, we disagree. Here, the habeas court could have

denied petitioner's motion to reopen his evidentiary hearing and thereby precluded him from entering additional evidence in support of his claim of jury bias. Instead, the circuit court allowed petitioner to supplement the record with additional documentary evidence. In so doing, the habeas court referenced the obituaries as a means of encouraging petitioner to do the work necessary to clarify the contested relationship between his father and Juror Holmes. In response, petitioner, without objection to the habeas court's order, supplemented the record with documentary evidence showing that petitioner's father and Juror Holmes were third cousins. The circuit court then relied on petitioner's documentary evidence, and not the obituaries, in denying habeas relief on petitioner's "biased jury" claim. Accordingly, we find no error.

Petitioner next argues that the habeas court violated his right to due process because the circuit court (1) dismissed his first ground for relief—his claim that his trial counsel provided ineffective assistance in arguing an alibi defense instead of self-defense, and (2) dismissed that first ground for relief without first holding an evidentiary hearing on that issue. In denying petitioner's ineffective assistance of counsel claim, the habeas court found that,

> [petitioner's] assertion of ineffective assistance of counsel lies primarily on the basis that [his] alibi witness [] was unconvincing after an effective cross examination and multiple witnesses testified to the contrary. Be that as it may, [petitioner] offers no evidence that he acted in self-defense. The decision to call the [alibi witness] was a strategic decision and simply because the testimony did not turn out as planned is not ineffective assistance of counsel. Because [petitioner] offers a mere recitation of ineffective assistance of counsel without adequate factual support, this ground is summarily dismissed.

Petitioner had a heavy burden in supporting his claim of ineffective assistance: "Where [trial] counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 643, 203 S.E.2d 445, 449 (1974). Moreover, Rule 4 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia provides the means for habeas courts to summarily dismiss a claim for relief where the petition contains a "mere recitation of the ground[] without adequate factual support." Having thoroughly reviewed the record on appeal, we concur with the habeas court's finding that petitioner's claim of ineffective assistance of trial counsel with regard to the presentation of an alibi defense lacked adequate factual support. We therefore find that the habeas court did not err in summarily dismissing petitioner's ineffective assistance of trial counsel claim.

As for petitioner's claim that the habeas court erred in dismissing petitioner's ineffective assistance of counsel claim absent an evidentiary hearing, we have said,

> [a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

6

Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 467, 194 S.E.2d 657, 658 (1973). Given that we concur with the habeas court's finding that petitioner's claim of ineffective assistance of trial counsel was properly summarily dismissed, we find, pursuant to *Perdue*, that the habeas court did not err in opting not to hold an evidentiary hearing on that claim.

Petitioner's third and final assignment of error is that the habeas court denied petitioner's right to a fair and impartial jury when it denied petitioner's claim for relief regarding Juror Holmes. Petitioner argues that his connections to Juror Holmes were so substantial that the trial court should have presumed that Juror Holmes was biased or prejudiced against petitioner. We have said, "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed. Syl. Pt. 1, *O'Dell v. Miller*, 211 W.Va. 285, 286, 565 S.E.2d 407, 408 (2002).

Our thorough review of the record on appeal shows that petitioner failed to prove he had a "substantial connection" with Juror Holmes. At petitioner's evidentiary hearing, he failed to contradict Juror Holmes's voir dire sidebar statement that, although petitioner's name seemed familiar, he had no independent memory of petitioner and he could be an impartial juror. Likewise, at the evidentiary hearing, petitioner failed to counter Juror Holmes's testimony that he was not related to petitioner's father and did not know why his brother had a steel plate in his head. Further, petitioner's own investigation refutes petitioner's father's "first cousin" testimony at the evidentiary hearing and supports Juror Holmes's testimony that the two were not first cousins. Based on this record, we find that the habeas court did not err in finding that petitioner failed to prove he was presumptively prejudiced by the inclusion of Juror Holmes on the jury.

Accordingly, we affirm the circuit court's June 25, 2015, and April 13, 2016, orders denying habeas relief.

Affirmed.

**ISSUED:** March 10, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7