# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**
**January 25, 2024**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-0486** (Greenbrier County CC-13-2020-F-102)

**Todd Wesley Clutter,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Todd Wesley Clutter appeals the order of the Circuit Court of Greenbrier County, entered on May 24, 2022, sentencing him to a determinate sentence of two years for his conviction of wanton endangerment by a firearm in violation of West Virginia Code § 61-7-12.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. Proc. 21.

Mr. Clutter entered into an agreement with his brother-in-law, Joe Sharp, to purchase the property on which Mr. Clutter and his wife resided. Mr. Sharp determined that Mr. Clutter failed to make payments, and he enlisted an attorney to initiate an unlawful detainer action. The attorney filed a petition in the Magistrate Court of Greenbrier County, but neither Mr. Clutter nor his wife filed an answer.[2] The magistrate court, consequently, entered default judgment and then awarded Mr. Sharp a writ of possession. Mr. Sharp's attorney requested the assistance of the Greenbrier County Sheriff's Department to evict Mr. Clutter from the subject property. Mr. Sharp, his attorney, and a uniformed sheriff's deputy went to the property to execute the eviction in May 2018. The attorney who accompanied the sheriff's deputy announced through an open window that the men were there to serve notice. According to the sheriff's deputy, he walked around the residence for at least thirty minutes and knocked on doors but received no response. Eventually, Mr. Sharp used a hammer or sledgehammer to break a doorknob. The sheriff's deputy and Mr. Sharp entered the residence, and the sheriff's deputy heard Mr. Clutter's wife say, "They're

---

[1] Mr. Clutter appears by counsel Paul S. Detch. Respondent State of West Virginia appears by Attorney General Patrick Morrisey and Assistant Attorney General R. Todd Goudy.

[2] When testifying at his trial, Mr. Clutter acknowledged that he received the initial petition, but he forwarded it to an attorney and believed it was addressed. When asked by his trial counsel whether he received a notice from the magistrate court directing him to appear for proceedings, he responded, "I believe so. I believe so."

1

breaking in."[3] When they did, Mr. Clutter appeared in the hallway and pointed a gun at the two. The sheriff's deputy, who had drawn his own weapon in response, commanded Mr. Clutter "a couple of times" to lower his weapon. Mr. Clutter eventually complied. He was arrested, charged with wanton endangerment involving a firearm, tried and found guilty by a jury, and sentenced as described above.

On appeal, Mr. Clutter asserts three assignments of error: that the State failed to prove that he committed wanton endangerment because his right to possess a firearm is guaranteed by the Second Amendment to the United States Constitution and he is protected by the "castle doctrine"[4]; that Mr. Sharp obtained the writ of possession under false pretenses and the entry into his home was, therefore, unreasonable[5]; and that the circuit court erred in allowing the State to argue that Mr. Sharp was the lawful owner of the property because the court was aware that property

_____

[3] Mr. Sharp's attorney left the premises before Mr. Sharp and the sheriff's deputy entered the residence.

[4] Mr. Clutter was convicted under West Virginia Code § 61-7-12, which provides, in part:

> Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years. . . .

He argues that any of his actions violating this section are vitiated by West Virginia Code § 55-7-22, which provides, in part, that

> [a] lawful occupant within a home or other place of residence is justified in using reasonable and proportionate force, including deadly force, against an intruder or attacker to prevent a forcible entry into the home or residence or to terminate the intruder's or attacker's unlawful entry if the occupant reasonably apprehends that the intruder or attacker may kill or inflict serious bodily harm upon the occupant or others in the home or residence or if the occupant reasonably believes that the intruder or attacker intends to commit a felony in the home or residence and the occupant reasonably believes deadly force is necessary.

To avail himself of the protection of West Virginia Code § 55-7-22, Mr. Clutter must show that he was a "lawful occupant" of the premises. It is apparent that he was not. Having found that Mr. Clutter was not a lawful occupant, we need not consider the remaining statutory requirements.

[5] In support of his second and third assignments of error, Mr. Clutter attached to his notice of appeal a complaint he filed in the circuit court in May 2019, asserting that he had fully discharged his loan with Mr. Sharp. Little detail is provided about the civil action initiated by that complaint, but Mr. Clutter represents that it is unresolved. We note that this complaint was filed more than a year after the events giving rise to Mr. Clutter's criminal indictment. At the time Mr. Clutter pointed his firearm at the sheriff's deputy and Mr. Sharp, ownership of the property was not in dispute, because the matter was fully adjudicated by the magistrate court.

2

ownership was at issue in a separate, unresolved legal proceeding. Mr. Clutter presents a brief, amalgamated argument in support of all three assignments of error. However, he fails to provide specific citations to the appendix record pinpointing when and how any such alleged errors were presented to the circuit court, thereby failing to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. Under that rule, we "may disregard errors that are not adequately supported by specific references to the record on appeal." We have long held that "errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there." Syl. Pt. 17, in part, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

Furthermore, Mr. Clutter has not asked us to review these issues for plain error, and we discern no reason to do so.

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syl. Pt. 7, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Had Mr. Clutter asked that we review his conviction for plain error, he would have been unable to meet the first prong of this test, because there is no error.

The evidence presented to the jury showed that a uniformed officer and a property owner were threatened with a firearm when appearing to effect legal process. Crucially, our review of the appendix record on appeal shows that when Mr. Clutter testified at his trial on his own behalf, he explained that he believed that he had fully discharged his debt and that Mr. Sharp unlawfully withheld the deed from him. Mr. Clutter was in no way impeded in presenting his own theory of the case. Nevertheless, the evidence that was available to the jury at the time of the trial establishes that Mr. Clutter was not the lawful occupant of the property when he threatened the property owner and the law enforcement officer.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 25, 2024

**CONCURRED IN BY:**

3

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn