700 S.E.2d 489

**STATE of West Virginia ex rel. Max
Paul KITCHEN, Petitioner
Below, Appellant**

v.

**Howard PAINTER, Warden, Mt. Olive
Correctional Complex, Respondent
Below, Appellee.**

No. 34713.

Supreme Court of Appeals of
West Virginia.

Submitted March 31, 2010.

Decided June 7, 2010.

Guy Bucci, Esq., Bucci, Bailey & Javins, Charleston, WV, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

Max Paul Kitchen, the appellant, appeals the August 22, 2007, order of the Circuit Court of Logan County that denied his petition for a writ of habeas corpus in which he sought relief from his conviction of first degree murder and his sentence of life imprisonment without the possibility of parole. In his appeal to this Court, the appellant raises

several assignments of error. After a careful review of the circuit court's ruling, the parties' arguments, and the record submitted on appeal, we affirm.

## I.

### FACTS

In 1996, Max Paul Kitchen, the appellant, was convicted of first degree murder with no recommendation of mercy for beating to death Andrew Caldwell with an aluminum baseball bat. The appellant was also convicted of conspiracy to commit malicious assault on Carl Starkey. The State presented evidence at trial that the appellant and Hank Mosley planned to assault the victims with ball bats because of their belief that the victims stole some marijuana being cultivated by the appellant and Mr. Mosley. When the appellant and Mr. Mosley became aware that the victims had ridden an all-terrain vehicle up the hollow where the appellant's and Mr. Mosley's marijuana patch was located, Mr. Mosley locked the gate to the main road coming out of the hollow so that the victims would have to exit the hollow by way of a path. The appellant and Mr. Mosley then hid on either side of the path with ball bats and ambushed the victims as they drove out of the hollow. Mr. Mosley beat Mr. Starkey with a bat and his fists while the appellant beat Mr. Caldwell with a bat.[1]

At trial, the State presented the testimony of six witnesses to the beatings. Carl Starkey, the victim of the attack by Hank Mosley, testified that he saw the appellant hit Mr. Caldwell with the ball bat. Brian Lambert testified that he saw Mr. Caldwell on his knees with one hand held out, and the appellant bringing the bat away from Mr. Caldwell's arm. Rodney Nelson testified that he saw Mr. Caldwell in the creek on his knees begging the appellant not to hit him, and he saw the appellant hit Mr. Caldwell in the head with the bat. Thomas Miller testified that he saw Mr. Caldwell on his hands and knees saying "don't hit me anymore," and he witnessed the appellant strike Mr. Caldwell

with the bat. Jake White testified that he saw the appellant standing over Mr. Caldwell with a bat in his hands. Finally, Hank Mosley testified that he heard the appellant yell, "lay down, lay down," and he heard a "big pop," although he never actually saw the appellant hit Mr. Caldwell.

The evidence at trial further indicated that Mr. Starkey was treated for his injuries in the emergency room and released that same night. Mr. Caldwell was hospitalized at Logan General Hospital before being transferred to Charleston Area Medical Center. About four days later, Mr. Caldwell died. The State adduced medical evidence indicating that Mr. Caldwell died as a result of multiple blunt force injury to the head. The evidence indicated that Mr. Caldwell had three injuries located at the top of his right eyebrow, above his right ear, and to the back of the head as well as numerous skull fractures located above his eyes and meeting at the top of his nose. In addition, the evidence disclosed that Mr. Caldwell had defensive wounds on his arm consistent with a blunt, heavy object such as a ball bat. The jury convicted the appellant of first degree murder without a recommendation of mercy in the beating death of Andrew Caldwell and conspiracy to commit malicious assault in Mr. Mosley's beating of Carl Starkey.[2]

The appellant subsequently filed a petition for appeal which this Court unanimously refused. Thereafter, the appellant filed a petition for a writ of habeas corpus in the Circuit Court of Logan County. After an omnibus evidentiary hearing, the circuit court denied the appellant's petition for habeas relief. The appellant then appealed the denial of habeas relief to this Court along with a motion to supplement the record for purposes of his appeal. This Court granted the appellant's motion to supplement the record and remanded the matter to the Circuit Court of Logan County with directions to consider the supplemented material and thereafter to enter a final order disposing of all of the appellant's claims. This Court dismissed the appellant's petition for appeal, with leave to the

---

1. Hank Mosley pled guilty to malicious assault, conspiracy to commit malicious assault, and cultivation of marijuana.

2. The jury acquitted the appellant of the malicious assault of Mr. Starkey.

appellant to file a petition for appeal from the circuit court's final order.

The instant case involves the denial of the appellant's habeas corpus claims upon remand to the circuit court.[3] After a second omnibus evidentiary hearing,[4] the Circuit Court of Logan County, by final order dated August 22, 2007, again denied the appellant a writ of habeas corpus. Specifically, the circuit court found that the appellant's trial counsel was not ineffective in failing to give an opening statement, in failing to develop a cogent and consistent defense, in failing to represent the appellant at the appellate and other critical stages, in failing to make rule specific objections to the introduction of evidence of uncharged conduct, or of lacking knowledge of the applicable law. However, the circuit court did find that trial counsel's performance was deficient in failing to move to bifurcate the guilt and mercy phases of the trial, in failing to call character witnesses in mitigation of sentencing, in failing to argue for mercy, and in failing to object to the prosecutor's argument against a recommendation of mercy in his rebuttal closing argument. Nevertheless, the circuit court found that due to the strength of the State's case and the brutality of the appellant's crime, there was no reasonable probability that in the absence of these failures, the result of the trial would have been different. Accordingly, the circuit court denied the appellant habeas relief.

## II.

## STANDARD OF REVIEW

■ In this case, this Court is charged with reviewing the circuit court's denial of the appellant's petition for habeas relief. In performing this task, we are mindful that,

[i]n reviewing challenges to the findings and conclusions of the circuit court in a

habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syllabus Point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). On reviewing a circuit court's ruling on claims of ineffective assistance of counsel, this Court has held:

An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially.

Syllabus Point 1, *State v. Warden, W. Va. Penitentiary*, 207 W.Va. 11, 528 S.E.2d 207 (1999). These standards will guide us in considering the issues raised by the appellant.

## III.

## DISCUSSION

### A.

*Ineffectiveness Assistance of Counsel*

■ The first assignment of error raised by the appellant is that his trial counsel was ineffective.[5] As to claims of ineffective assistance of counsel, this Court has articulated the following standard:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466

3. The Honorable Roger Perry presided over the appellant's original habeas proceedings. Subsequently, this Court granted Judge Perry's motion for recusal and appointed the Honorable Irene Berger as a special judge. Judge Berger presided over the appellant's second habeas proceedings and entered the order now on appeal.

4. Witnesses at this second omnibus hearing included the appellant, the appellant's mother, and

trial counsel. The appellant also presented the expert testimony of Greg Campbell, a Charleston attorney, in support of the appellant's ineffective assistance of counsel claim.

5. The appellant's trial counsel was not the same as his habeas counsel and his counsel in the instant appeal.

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syllabus Point 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). This Court further explained in *Miller* that,

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syllabus Point 6, *State v. Miller, id.* Finally, this Court has indicated that,

> [w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

Syllabus Point 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

On appeal to this Court, the appellant alleges that a review of his trial counsel's acts and omissions demonstrate an undisputable pattern of legal unpreparedness and strategic uncertainty which resulted in the appellant's failure to receive a fair trial. In order to prove his trial counsel's ineffectiveness, the appellant alleges several areas in which trial counsel was deficient. We will now proceed to evaluate the appellant's claims.

1. *Counsel failed to conduct effective cross examination of the State's witnesses.*

■ It is the position of the appellant that his trial counsel failed to conduct effective cross-examinations of the State's witnesses. Specifically, the appellant avers that counsel failed to bring out in cross-examination and in her closing argument that only one witness, Rodney Nelson, testified that he saw the appellant strike the victim in the head. After examining all of the evidence introduced against the appellant, we believe that counsel's omission is not significant. The medical evidence indicated that Mr. Caldwell had three head injuries as well as numerous skull fractures, and that he died as a result of multiple blunt force injury to the head. Also, according to the witnesses of the attack, the appellant was the only person who struck Mr. Caldwell. Specifically, Mr. Starkey and Mr. Miller testified that they saw the appellant strike Mr. Caldwell with the bat although they did not specify where the appellant hit the victim. Mr. Lambert testified that he saw the appellant bringing the bat away from Mr. Caldwell's arm, and Mr. White testified that he saw the appellant standing over Mr. Caldwell with a bat in his hands. Finally, Mr. Mosley testified that he heard the appellant yell at the victim to "lay down," and he heard a "big pop." In light of this evidence, we find that trial counsel's failure to emphasize to the jury that only one witness actually saw the appellant strike Mr. Caldwell in the head does not constitute ineffective assistance of counsel.

Second, the appellant complains of his counsel's failure to convey to the jury a discrepancy between Carl Starkey's statement to a State Police officer on the night of the incident and his testimony at trial. We likewise find no merit to this claim. In his initial statement, Mr. Starkey indicated that,

> When we got down to the creek, close to Dehue Road, I saw about five guys jumping out of the weeds. I was driving the four wheeler.
>
> While we were still moving they started hitting us with ballbats. I knew two of the guys, Max Kitchen and Hank Mosely (sic). Hank and Max both were telling us that we had stole their pot. They hit me a bunch of times. I really don't know how many.
>
> I know there were at least three more guys, but I don't know who they were.

After they beat me and Andrew, they took my four wheeler, a 1993 Kawasaki, black in color.

Contrary to the appellant's assertion, trial counsel did cross examine Mr. Starkey regarding the statement he gave to the State Police officer on the night of the incident. Specifically, the record reflects the following:

Q. Mr. Starkey, do you recall talking to a Trooper J.B. Schoolcraft on the evening of the incident, night of the incident?

A. Yes, ma'am, at the hospital.

Q. Did you tell him that you saw five guys jumping out of the weeds?

A. Yes, ma'am.

Q. And the only two that you knew were Max Kitchen and Hank Mosley?

A. Yes, ma'am.

Q. Did you on that evening know Brian Lambert?

A. I've heard his name. I don't know.

Q. So you wouldn't know him if you saw him, until on that evening. You wouldn't have known him if you saw him. Right?

A. I never looked at anybody else's face, ma'am.

Q. Did you know on that evening Rodney Nelson?

A. I've heard the name, you know. I used to live up there in that area.

Q. James Jake White, did you know him?

A. I know Jake.

Q. Thomas Miller?

A. Yes, Thomas.

Q. To this day, would you know Brian Lambert if you saw him?

A. Yes.

Q. You've met him or talked with him since the incident?

A. No. I haven't met him or talked with him. I've seen him.

Q. Seen him since the incident?

A. Just to go by.

Q. What about Mr. Nelson?

A. No, ma'am.

Q. You still don't know him?

A. No.

Based on the above portion of the trial transcript, we conclude that trial counsel did not fail to convey to the jury that Mr. Starkey provided an initial statement to the State Police that placed most or all of the eyewitnesses at the scene with the appellant and Mr. Mosley when the attack occurred.

Finally, the appellant avers that his trial counsel failed to establish, through the statements given to the State Police, that the appellant actually pulled Mr. Mosley off of Mr. Starkey because the appellant feared that Mr. Starkey may drown. Again contrary to the appellant's contention, trial counsel did question Mr. Mosley about this incident during cross examination. Specifically, the following conversation occurred during trial counsel's cross examination of Mr. Mosley:

Q. And was that after Mr. Kitchen came and pulled you off of Mr. Starkey?

A. He tapped me on the shoulder and told me he had enough. It was after that.

Q. When you entered your plea, did you not testify that after Mr. Kitchen [ ] tapped me on the shoulder, he told me to get off of Carl Starkey?

A. It might be.

Q. Is that what he did, told you to get off of him?

A. It was either get off or he'd had enough.

We conclude from the portion of the transcript quoted above that trial counsel effectively cross-examined Mr. Mosley.

In sum, the transcript indicates that trial counsel attempted to reveal alleged inconsistencies between each witness's trial testimony and statements he previously gave to law enforcement authorities. Trial counsel also attempted to reveal discrepancies between the accounts testified to by the witnesses. Therefore, we find no merit in the appellant's claim that his trial counsel failed to conduct effective cross examination at trial.[6]

**6.** According to the appellant, counsel also failed to elicit any medical evidence from the medical professionals to support her initial theory that the State's evidence of the circumstances of Mr. Caldwell's murder contradicted the medical evidence. However, the appellant also indicates

2. *Trial counsel's first theory of defense was inconsistent with her self-defense theory, and counsel's self-defense theory was never developed or explained to the jury.*

██ According to the appellant, counsel utilized two inconsistent theories of defense—the appellant was not the individual who committed the murder, and self-defense. The appellant also makes the incongruous contention that counsel failed to develop and explain the theory of self-defense to the jury.

██ The circuit court, in denying habeas relief to the appellant, found with regard to this issue that no substantive evidence was brought forth that supported a self-defense claim and that indicated that the incident was anything other than an unprovoked attack by the appellant and Mr. Mosley. We agree with the circuit court. "Ordinarily, self-defense is not available to the aggressor in an affray who precipitates it without legal justification." *State v. Watson,* 164 W.Va. 642, 651, 264 S.E.2d 628, 633 (1980) (citations omitted). The evidence at trial was that the appellant precipitated the affray without legal justification by obtaining a ball bat and lying in wait for the purpose of ambushing the victim. Considering this evidence, we find that it was not ineffective assistance of counsel not to develop a theory of self-defense.[7]

Moreover, the appellant's argument that his trial counsel failed to develop a cogent and consistent theory of defense also is unavailing. This Court's review of the trial transcript indicates that counsel attempted to create reasonable doubt by revealing alleged inconsistencies in the witnesses' accounts of the murder as well as discrepancies between eyewitness testimony and the medical evidence. In addition, trial counsel attempted to show that those who were present when the murder occurred agreed to falsely accuse the appellant of the murder.

3. *Failure to Effectively Represent the Appellant at the Appellate Level and Other Critical Stages.*

According to the appellant, trial counsel's performance at the appellate stage was deficient in that she failed to present any substantive factual or legal analysis to support the issues raised in her petition for appeal

---

that no medical evidence supported trial counsel's theory. Obviously, counsel cannot be faulted for failing to elicit evidence, via cross-examination, that did not exist.

The appellant further accuses his trial counsel of failing to cross examine the State's witnesses concerning testimony that there was no intent to kill anybody. However, the appellant's brief does not clearly indicate where this testimony appears in the record. Therefore, this Court is unable to provide a meaningful review of this issue.

7. In support of his argument that trial counsel should have developed a self-defense theory, the appellant refers to evidence that the appellant believed that Mr. Caldwell and Mr. Starkey could have been carrying guns. Specifically, the appellant cites the following cross examination of Mr. Starkey by trial counsel:

Q. In your statement to Trooper Schoolcraft, did you tell Trooper Schoolcraft that you did hear someone saying something about a gun?
A. Yes, ma'am.
Q. But you don't know who that was that was hollering about a gun?
A. No. They must have thought we had one or something.
The appellant also cites to trial counsel's cross examination of Mr. Mosley as follows:

Q. You say you didn't see either Carl Starkey or Andrew Caldwell with a gun. Is that correct?
A. No, ma'am.
Q. But weren't you concerned that they had a gun?
A. Concerned, yes.
Q. As a matter of fact, when Mr. Kitchen came up and tried to get you to get off Mr. Starkey, you told him check and see if he has a gun?
A. No. I said check him.
Q. You thought he had a gun or could have one. Is that correct?
A. Could have.
Q. Had you known of Mr. Carl Starkey to carry weapons?
A. Actually carry weapons?
Q. Yes.
A. I'm not for sure about that.
The testimony cited by the appellant does not support a theory of self-defense under the facts of this case. The evidence indicates that the appellant and Mr. Mosley were the aggressors in the altercation in that they lay in wait with baseball bats in order to ambush the victims. Also, there is no evidence that either of the victims actually drew a firearm on his attacker. Finally, the above testimony does not indicate that the appellant believed that the victims were in possession of firearms.

before this Court. The only specific example of this failure given by the appellant is trial counsel's failure to discuss *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), to challenge the admission at trial of evidence of the appellant's marijuana cultivation. As this Court explains in section III.B., *infra*, however, admission of evidence of the appellant's marijuana cultivation was not improper. Therefore, counsel's failure to discuss *McGinnis* in the appellant's petition for appeal was not prejudicial.[8]

The appellant next complains that counsel failed to advise or explain the implication of the State's plea offer of first-degree murder with a recommendation of mercy. According to the appellant's testimony at the second omnibus habeas hearing, however, trial counsel relayed the State's plea offer to him and explained that if he took the plea he would serve 15 years to life in prison. She further explained to the appellant that he could be convicted of life without mercy if he did not accept the plea offer. In light of this testimony, we find the appellant's claim on appeal that his counsel failed to explain the implications of the State's plea offer to be without merit.

Finally, the appellant asserts that counsel's failure to demand a preliminary hearing for purposes of discovery was deficient. The record indicates, however, that the appellant waived his right to a preliminary hearing. Specifically, the waiver, which is signed by the appellant states that, "[i]n the presence of my counsel ... who has fully explained the charges against me, and having received a copy of the charges, I hereby waive my right to a Preliminary Hearing." Having waived his right to a preliminary hearing, the appellant cannot now complain of his counsel's failure to demand such a hearing.

### 4. Trial Counsel's decision to not give an opening statement

At the appellant's criminal trial, his counsel originally deferred giving her opening statement until after the close of the State's case. However, at the close of the State's case, counsel informed the court that she did not intend to deliver an opening statement. The appellant now contends that this constituted ineffective assistance of counsel for several reasons. First, counsel did not communicate to the appellant her decision to waive the opening statement despite the fact that this was the appellant's decision to make. Second, counsel failed to give a good reason for her decision to waive the opening statement at the habeas hearings below. Third, had counsel delivered an opening statement, she could have painted a favorable picture of the appellant by informing the jury that he had no prior criminal history and was a good son, father, friend, worker, and community member.[9]

█ We find the appellant's argument to be unpersuasive. Courts have determined the decision whether to waive the opening statement to be "essentially tactical in nature, and not objectively unreasonable," *Huffington v. Nuth*, 140 F.3d 572, 583 (4th Cir.1998) (citations omitted), and the appellant has provided us with no legal authority to the contrary. Also, we agree with the State's brief that "[b]ecause an opening statement is of no evidentiary value and is little more than a preview of the evidence, the decision whether or not to offer an opening remains squarely in the category of trial

---

8. Similarly, the appellant asserts that his trial counsel was ineffective in failing to make "rule specific" objections to the introduction of the marijuana cultivation. For the same reason, we find no merit to this assertion.

9. The appellant also notes that when counsel initially deferred her opening statement, the trial court advised the jury that counsel had exercised her option to give her opening after the State presented its evidence. However, at the close of the State's case, counsel proceeded to call her first witness, and nothing was said to the jury to explain counsel's decision to waive the giving of

an opening statement. According to the appellant, the inherent prejudice in counsel's waiver of her opening statement was heightened by the trial court when it originally informed the jury that counsel was merely deferring the giving of her opening statement. We accord this argument no weight. As noted above, counsel's decision to waive the opening statement was objectively reasonable. Also, any effect of the trial court's original statement to the jury that counsel was merely deferring the giving of her opening statement was certainly minimal and does not rise to the level of prejudice.

strategy." Therefore, we find that trial counsel's decision to waive the opening statement is within the wide range of reasonable attorney conduct.[10]

### 5. Failure to present character evidence

The appellant contends that trial counsel had a duty to mitigate his potential sentence with mitigating evidence. According to the appellant, the effect of trial counsel's failure to present mitigating evidence was exacerbated by the fact that he did not testify. Therefore, it was incumbent upon counsel to provide the jury with a favorable impression of the appellant. Specifically, the appellant asserts that it constituted ineffective assistance for his counsel to fail to call crucial character witnesses; to fail to move for bifurcation of the guilt and mercy phases of the trial; and to fail to raise the issue of mercy during closing argument.

In its August 22, 2007, order, the circuit court found the appellant's trial counsel to be deficient in failing to present evidence in support of mercy under the first prong of this Court's test to determine ineffective assistance of counsel in *State v. Miller, supra.* In other words, the circuit court found that trial counsel's performance in failing to present evidence in mitigation of sentencing was deficient under an objective standard of reasonableness. However, the circuit court also found that the appellant failed to prove the second prong of the analysis. Specifically, the circuit court concluded that, due to the strength of the State's evidence and the brutality of the appellant's offense, there was not a reasonable probability that in the absence of these failures, the result of the appellant's trial would have been different.

■ This Court implied in *Leach v. Hamilton,* —— W.Va. ——, 280 S.E.2d 62 (1981), that generally counsel should introduce mitigation evidence in a murder case. In the instant case, however, we do not believe that the trial counsel's decision to not introduce character evidence was deficient. The pri-

mary evidence adduced by the appellant in support of the introduction of character evidence is the fact that at the time of his trial, the appellant was a single father to his five-year-old daughter and he had no prior criminal history. In addition, the appellant's mother, Nell Brown, testified at the second omnibus habeas hearing, that the appellant was a solid worker, and he befriended those less fortunate than he. We find that this evidence is not sufficient to prove by a preponderance of the evidence that trial counsel was deficient in failing to introduce it.

Significantly, the appellant has referred this Court to no evidence of record indicating what kind of father the appellant was to his young daughter. As suggested by the State in its brief, the fact that the appellant cultivated marijuana and endangered his relationship with his daughter by killing a person does not speak highly of the appellant as a parent and provides ample rebuttal evidence to the State. In his brief to this Court, the appellant alludes to several friends and family members who he says would have provided favorable character testimony on his behalf. Trial counsel testified below, however, that many of the appellant's friends would not have been effective character witnesses because they had used marijuana with the appellant. With regard to the potential testimony of the appellant's family members, other than the appellant's mother, the appellant did not make a record through proffered testimony or affidavits as to the substance of family member testimony. Absent such evidence, this Court is unable to determine whether or to what extent the testimony of these potential witnesses would have been helpful to the appellant.

■ With regard to the appellant's mother's testimony, generally when character witnesses are family members or friends, their credibility is more likely to be questioned given their relationship with the defendant. *See Com. v. Hoffman,* 403 Pa.Super. 530, 589 A.2d 737, 746 (Pa.Super.1991) (finding that

---

**10.** Having found that the appellant's trial counsel was not ineffective in waiving the opening statement, we need not address the appellant's claim that counsel improperly failed to defer to the appellant on the question of whether to give

an opening statement. We do note, however, Comment to Rule 1.2 of the West Virginia Rules of Professional Conduct which states in pertinent part that "the lawyer should assume responsibility for technical and legal tactical issues."

counsel was not ineffective in failing to call a friend of the accused given that the witness's credibility would have been seriously questioned). For this reason, we believe that the weight accorded the testimony of the appellant's mother would have been limited.

In addition, courts have found that the decision to call witnesses during a trial is a tactical one. *See Goodson v. United States,* 564 F.2d 1071, 1072 (1977) (referring to counsel's decision not to interview or call a witness as a "tactical decision."). This Court has held:

> Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

Syllabus Point 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). The appellant's trial counsel testified below that the appellant was less than forthcoming with her prior to trial and, consequently, she feared potentially damaging rebuttal testimony if she introduced character evidence. Based on

the foregoing considerations, this Court is unable to conclude that no reasonably qualified defense attorney would have acted as trial counsel in deciding not to call character witnesses on behalf of the appellant.[11]

### 6. *Failure to ask for mercy in closing argument*

The appellant argues that trial counsel was ineffective in failing to ask for mercy in her closing argument. We disagree.[12] This Court has found that trial counsel made a reasonable tactical decision not to introduce character evidence on behalf of the appellant. As a result of not having introduced character evidence, trial counsel had no basis to support a plea for mercy during closing argument. Notably, trial counsel did request a jury instruction on mercy which the trial court gave.[13] This instruction adequately informed the jury of the necessity of making a recommendation of mercy in order for the appellant to be eligible for parole. The instruction further indicated that eligibility for parole is not a guarantee of parole. Thus, the jury was fully informed of the option of recommending mercy as well as the implications of that option.[14]

---

**11.** Related to the issue of failure to call character witnesses is the appellant's claim that counsel failed to discuss bifurcation of the trial with the appellant and failed to utilize it as a vehicle to introduce mitigating evidence on the appellant's behalf. Having found that counsel's decision not to introduce character evidence was not deficient, we likewise find that trial counsel's decision not to move to bifurcate the trial did not constitute ineffective assistance of counsel. Clearly, counsel's decision to not present character evidence obviated any need for a bifurcated trial.

**12.** This Court's conclusion that the appellant's trial counsel was not deficient in deciding not to move for bifurcation, not to call character witnesses, and not to argue for mercy conflicts with the circuit court's finding on this issue. Nevertheless, we previously have held:

> This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.

Syllabus Point 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965).

**13.** The appellant also contends that his trial counsel failed to conduct a reasonable investiga-

tion in order to discover evidence in support of a recommendation of mercy. However, other than the mercy evidence discussed in the body of the opinion, the appellant fails to provide examples of evidence that a reasonable investigation would have discovered. For this reason, we give no credence to this contention.

**14.** The mercy instruction stated:

> The Court instructs the jury that if you find the Defendant guilty of murder in the 1st degree, the Court must sentence the Defendant to confinement in the penitentiary for life. The Defendant will not be eligible for parole unless you add to your verdict a recommendation of mercy. A recommendation of mercy would mean the Defendant could be eligible for parole consideration only after having served a minimum of fifteen (15) years. Otherwise the Defendant would be confined to the penitentiary for life without possibility of parole.
>
> Mere eligibility for parole in no way guarantees immediate parole after fifteen (15) years. Parole is given to inmates only after a thorough consideration of their records by the parole board.

This Court has indicated "that it is the mandatory duty of the trial court to instruct the jury that it may add a recommendation of mercy to its

Having thoroughly evaluated all of the appellant's claims that his trial counsel was deficient and that he was prejudiced as a result, for the foregoing reasons we conclude that the circuit court did not err in denying habeas relief to the appellant based on these claims.[15]

## B.

### *Introduction of Rule 404(b) Evidence*

In his second assignment of error, the appellant asserts that it was reversible error for the trial court to admit evidence relating to his cultivation of marijuana. As noted above, the State introduced evidence that the appellant's motive for attacking Mr. Caldwell was the appellant's belief that Mr. Caldwell had stolen some of his marijuana. The appellant now claims that the State failed to produce extrinsic evidence of the existence of the marijuana patch and that the trial court failed to hold the mandatory *in camera* hearing to determine by a preponderance of the evidence that the marijuana cultivation by the appellant actually occurred.

■■■■ According to Rule 404(b) of the West Virginia Rules of Evidence,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused,

the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This Court has held that,

The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial.

Syllabus Point 12, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). With regard to predicates to admission of evidence under Rule 404(b), this Court held in Syllabus Points 1 and 2 of *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994) as follows:

1. When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which

---

first degree murder verdict." *State v. Miller,* 178 W.Va. 618, 620, 363 S.E.2d 504, 506 (1987) (footnote and citations omitted).

**15.** The appellant also contends that counsel was deficient in failing to object to the prosecutor's rebuttal argument against a recommendation of mercy and for failing to raise this issue in the appellant's direct appeal to this Court. However, because the appellant cites no legal authority in support of this argument, we decline to address it. *See State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (explaining that "issues which are … mentioned only in passing but are not supported by pertinent authority … are not considered[.]" (Citation omitted)).

Finally, the appellant avers that the cumulative errors committed by trial counsel substantially prejudiced him and likely impacted the outcome

of the trial. According to the appellant, even if this Court does not find that any individual error is sufficient to grant him relief, he has shown that his trial counsel's cumulative errors denied him a fair trial. This Court has held that

Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.

Syllabus Point 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972). Having found that trial counsel did not commit numerous errors, we find that the cumulative error doctrine is not applicable.

the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

2. Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Upon application of these rules to the facts of this case, we conclude that the evidence complained of was properly admitted into evidence by the trial court. The trial court held a pre-trial hearing in which it discussed the admission of the evidence of marijuana cultivation. The trial court then entered an order in which it granted the State's motion to permit the introduction of the evidence. At both the hearing and in its order, the trial court found that the evidence was relevant on the issue of motive, and that its probative value outweighed any prejudicial effect.

Although the trial court did not specifically state at the hearing or in its order that the appellant's marijuana cultivation was supported by a preponderance of the evidence, the record shows that there was sufficient evidence to support the introduction of the evidence. At trial, Mr. Starkey testified that as he and Mr. Caldwell were being beaten, Mr. Mosley and the appellant "said we just stole their pot." Mr. White testified that he heard a conversation between Mr. Mosley and the appellant in which they mentioned that "[t]hey grew dope up in the hollow," and "[t]hey said it was the best they ever did." Finally, Mr. Mosley testified that prior to the attacks on the victims, the appellant talked about "whipping their ass for stealing our weed," and that there was marijuana up the hollow that belonged to him and the appellant. He further testified that he pled guilty to the cultivation of marijuana. Contrary to the appellant's assertion, having produced sufficient evidence of the marijuana cultivation through testimony, the State was not required to introduce physical evidence of the existence of a marijuana patch.

The record also indicates that the trial court properly instructed the jury with regard to the evidence of marijuana cultivation. At the end of Mr. Starkey's, Mr. White's and Mr. Mosley's testimony as well as in its final instructions to the jury, the trial court instructed the jury that the evidence of marijuana cultivation was admitted only to show the motive of the appellant in connection with the offenses of murder and malicious assault and to show whether there was preparation and planning in connection with the offense of conspiracy with which the appellant was charged.

Finally, we find the circuit court's ruling that evidence of marijuana cultivation was relevant to show the appellant's motive for the crime of murder and that the probative value of the evidence outweighed its prejudicial effect to be proper under our law. Accordingly, we conclude that the trial court substantially complied with Rule 404(b) and our case law in admitting evidence of marijuana cultivation. Therefore, the circuit court did not err in denying relief to the

appellant on the ground that the evidence was improperly admitted.

 This Court further believes that besides being properly admitted under Rule 404(b), the evidence complained of was also properly admitted as part of the *res gestae* of the crime. This Court explained in *State v. LaRock,*

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is . . . appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted). It seems doubtful this case could have been presented appropriately without showing when and how the young victim received the injuries that appeared on his body. Evidence the defendant was responsible for all the injuries to the victim would seem to " 'complete the story of the crime.' " *Masters,* 622 F.2d at 86. (Citation omitted). Indeed, evidence admissible for one of the purposes specified in Rule 404(b) and *res gestae* not always is separated by a bright line. *See United States v. Cook,* 745 F.2d 1311, 1317–18 (10th Cir. 1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

196 W.Va. 294, 312 n. 29, 470 S.E.2d 613, 631 n. 29 (1996). In the instant case, Mr. Mosley testified that he and the appellant planned to attack Mr. Starkey and Mr. Caldwell because of their belief that Mr. Starkey and Mr. Caldwell stole some of their marijuana. This evidence is inextricably intertwined with the offense of murder because it indicates the appellant's motive for the murder. Further, the marijuana evidence is crucial to explaining the sequence of events immediately prior to the attack on the victims. Thus, the evidence is necessary to provide context and to complete the story of the crime.

The appellant also argues, under this assignment of error, that the introduction of evidence that Mr. Mosley pled guilty to marijuana cultivation constituted reversible error because the appellant was never charged with the crime of marijuana cultivation. According to the appellant, Syllabus Point 3 of *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982), limits the admissibility of an accomplice's testimony regarding his guilty plea to only those crimes also charged against the defendant. This Court finds the appellant's reliance on *State v. Caudill* to be misplaced.

In *State v. Caudill,* the appellant, Mr. Caudill, and two co-defendants were involved in a robbery that also resulted in the kidnaping and deaths of two victims. Mr. Caudill entered pleas of guilty to the first degree murders of the victims, but went to trial on the charge of armed robbery. At Mr. Caudill's trial, Mr. York, a co-defendant, testified that he had entered pleas of guilty to robbery and kidnaping, and Mr. Finley, the other co-defendant, testified that he had entered a plea of guilty to armed robbery. On appeal to this Court, Mr. Caudill assigned the testimony of Mr. York and Mr. Finley as error on the basis that their testimony that they had entered pleas of guilty and been sentenced for the same crime for which Mr. Caudill was on trial was error. In considering Mr. Caudill's assigned error, this Court recognized the general principle that "[a] guilty plea made by an accomplice cannot be used as an attempt to show guilt by association." *State v. Caudill,* 170 W.Va. at 81, 289 S.E.2d at 755. We held in Syllabus Point 3 of *State v. Caudill* that,

> In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the

crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness' credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

Clearly, Syllabus Point 3 of *State v. Caudill* addresses accomplice testimony of a plea to an offense with which the defendant is also charged. Mr. Caudill raised as error the fact that Mr. York and Mr. Finley testified that they entered guilty pleas to robbery, the crime for which Mr. Caudill was on trial. In contrast, the appellant in this case complains of Mr. Mosley's testimony that he pled guilty to marijuana cultivation, an offense for which the appellant was not on trial. Mr. Mosley's testimony is not governed by Syllabus Point 3 of *State v. Caudill* but rather by Rule of Evidence 404(b) and this Court's jurisprudence construing that rule. This Court determined above that the admission of the evidence of marijuana cultivation was not improper under Rule 404(b). Therefore, having found that Syllabus Point 3 of *State v. Caudill* does not apply to the facts of this case, we find no merit to the appellant's argument that Mr. Mosley's testimony that he pled guilty to marijuana cultivation was improper.[16]

## C.

### Prosecutor's Closing Argument Remarks

The appellant next alleges error by the circuit court in failing to grant the appellant relief based on allegedly misleading and prejudicial remarks made by the prosecutor during his closing argument. According to the appellant, the trial court should have instructed the jury to disregard the prosecutor's remarks.

In his closing argument, the prosecutor commented on testimony that the appellant wanted to call the police on Mr. Starkey and Mr. Caldwell instead of attack them. The prosecutor stated:

> There was some mention made with regard to calling the police with regard to

someone stealing pot. Do we really believe that anyone who is guilty of the crime of cultivation of marijuana, a felony, is going to call the police and say hey, somebody's stealing my dope? The State would submit to you that is not within the realm of possibility.

The appellant contends that these comments were designed to mislead the jury because the appellant was never charged with or convicted of the felony of marijuana cultivation. The appellant further argues that the trial court's failure to take curative measures to correct the prosecutor's improper remarks prejudiced the appellant.

This Court held in Syllabus Point 6 of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995), that,

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Application of these factors to the instant case leads this Court to conclude that the prosecutor's comment, even if improper, was harmless. First, the prosecutor did not say that the appellant had been convicted of the felony of marijuana cultivation and it is unlikely that the jury understood the comment as such. Instead, the jury would have understood the comment as a reference to the appellant's marijuana cultivation, a fact which had been testified to by three witnesses. Second, the prosecutor's remark was isolated. Third, absent the prosecutor's remark, there was more than sufficient competent evidence to establish the appellant's guilt. Finally, the comment was not deliberately placed before the jury to divert atten-

---

**16.** The appellant does not complain of Mr. Mosley's testimony that he entered a guilty plea to conspiracy to commit malicious assault, a crime of which the appellant was convicted.

tion to extraneous matters.[17] Instead, the prosecutor was addressing the absurdity of a claim that the appellant wanted to call the police on Mr. Starkey and Mr. Caldwell for stealing from his and Mr. Mosley's marijuana patch.[18]

## D.

### Juror Disqualification

The appellant propounds in his next assignment of error that the circuit court erred in denying habeas relief based on the trial court's refusal to disqualify two jurors with strong ties to the prosecutor. The record below indicates that prospective juror Carol Melton was a neighbor and friend of the prosecutor. Also, the prosecutor was the coach of Ms. Melton's son's sports team and provided legal assistance to Ms. Melton in the purchase of her home. Prospective juror Annie Hall was related by marriage to Benny Adkins, the prosecutor's investigator who sat at the prosecutor's table throughout the appellant's trial. After the trial court denied counsel's motion to excuse the jurors for cause, counsel used peremptory challenges to remove the two jurors. The appellant now contends that as a result of the two prospective juror's relationships with the prosecutor or his employee, the prospective jurors should have been removed for cause.

■ This Court finds that the circuit court did not err in denying habeas relief to the appellant based on the trial court's failure to remove the two challenged prospective

jurors for cause. With regard to cognizable habeas corpus claims, this Court has held that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syllabus Point 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979). We conclude that any error in failing to disqualify the complained of prospective jurors for cause amounts to ordinary trial error and is not of constitutional magnitude.

■ The right to an impartial and objective jury is a fundamental right. This Court held in Syllabus Point 4 of State v. Peacher, 167 W.Va. 540, 280 S.E.2d 559 (1981), that

The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective voir dire of the jury panel is necessary to effectuate that fundamental right.

However, because the prospective jurors at issue did not sit on the appellant's jury, the appellant is unable to show that the jury in his trial was not impartial and objective. The most that the appellant can show is a violation of his right to a jury panel of twenty jurors free from exception under W. Va.Code § 62–3–3 (1949).[19] But as this Court ex-

---

**17.** In Syllabus Point 3 of State v. Spicer, 162 W.Va. 127, 245 S.E.2d 922 (1978), this Court held:

Where the prosecution improperly introduces evidence of other criminal acts as part of the res gestae or same transaction beyond that reasonably required to accomplish the purpose for which it is offered, and makes remarks concerning such other crime evidence in argument for the purpose of inflaming the jury, the conviction will be reversed on the ground that the defendant was denied the fundamental right to a fair trial.

In the instant case, we find that the evidence of marijuana cultivation was properly admitted for the purpose of showing motive, preparation, and planning, and that the evidence was not used beyond that reasonably required to accomplish the purposes for which it was offered. As noted above, we further believe that the prosecutor's

comment on this evidence was intended to counter evidence offered by the appellant and was not intended to inflame the jury.

**18.** The appellant also argues that the circuit court erred in failing to make findings regarding the issue of the prosecutor's alleged improper remarks. Having found that the remarks do not constitute reversible error, we find it unnecessary to address this argument.

**19.** According to W. Va.Code § 62–3–3, in relevant part,

In a case of felony, twenty jurors shall be drawn from those in attendance for the trial of the accused. If a sufficient number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors, free from exception, be completed[.]

plained in *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), a violation of W. Va. Code § 62-3-3 is not constitutional error.

The mere presence of a biased prospective juror on a jury panel, although undesirable, does not threaten a defendant's constitutional right to an impartial jury if the biased panel member does not actually serve on the jury that convicts the defendant. Although a defendant may be forced to use a peremptory challenge to remove a juror that should have been removed for cause does not alone invalidate the fact the juror was thereby removed from the jury as effectively as if the trial court had excused him for cause. Peremptory challenges are merely a means of achieving an impartial jury. They are neither mandated by the United States or the West Virginia Constitution nor of constitutional dimension and we will not permit the loss of a peremptory challenge to establish the breach of a constitutional guarantee in this context.

194 W.Va. at 587, 461 S.E.2d at 93 (citations, internal brackets, and quotations marks omitted). In Syllabus Point 7 of *Phillips*, this Court held:

A trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice.

■ In the instant case, the prospective jurors complained of did not serve on the jury that convicted the appellant. As a result, the appellant is unable to show a violation under the state and federal constitutions. Accordingly, we find that the circuit court did not err in failing to grant habeas relief to the appellant based on the presence of pro-

spective jurors Melton and Hall on the jury panel.[20]

## IV.

## CONCLUSION

For the reasons stated above, we conclude that the appellant was not denied the assistance of counsel or a fundamentally fair trial as contemplated by the state and federal constitutions. Therefore, we find that the circuit court's denial of the appellant's petition for a writ of habeas corpus was proper. Accordingly, this Court affirms the August 22, 2007, order of the Circuit Court of Logan County that denied habeas corpus relief to the appellant.

Affirmed.

---

20. As his final assignment of error, the appellant argues that cumulative error requires a reversal of his convictions. We find this argument to be unavailing. After carefully reviewing the appellant's assignments of error and the record below, this Court has not identified any instances of error that rise to a constitutional level or errors so numerous that the appellant was denied a fair trial. Therefore, we find that the circuit court did not err in denying relief to the appellant based on his claim of cumulative error.