# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Edwin W. II,
**Petitioner Below, Petitioner**

**FILED**

**November 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-1063** (Marion County 11-C-19)

**David Ballard, Warden,**
**Mt. Olive Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Edwin W. II, by counsel Belinda A. Haynie, appeals the Circuit Court of Marion County's October 1, 2015, order denying his petition for writ of habeas corpus.[1] Respondent David Ballard, Warden, by counsel Gordon L. Mowen II, filed a response. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his habeas petition because (1) the admission of certain medical evidence violated his constitutional right to confrontation; (2) the circuit court failed to conduct a harmless-error analysis of the confrontation issue, which would have shown that the constitutional error was not harmless; and (3) his trial counsel was constitutionally ineffective.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2006, petitioner was indicted on eleven counts of felony sex crimes including multiple counts of first-degree sexual assault; one count of sexual abuse by a parent, guardian, or custodian; one count of incest; and two counts of use of obscene matter to seduce a minor. Petitioner's victim was his sister-in-law's daughter, A.C., a female born in 1995.

Petitioner's trial by jury commenced in December of 2006. At trial, A.C. testified that she

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, petitioner filed a motion to seal certain portions of the record due to the confidential nature of the information contained therein. This Court granted that motion by order entered in April of 2016.

1

spent the night at the home of petitioner and her aunt in Marion County, West Virginia. Sometime during the night, she awoke to find petitioner at the end of the bed on his knees with a pornographic magazine beside her and a pornographic movie on the television. A.C. testified that petitioner asked her if she had any questions about the pornography; showed her an egg-shaped sexual device and a "fake man's privates"; told her to remove her pajamas and hold the sexual device; and placed the sexual device on her private parts. A.C. further testified that petitioner obtained a lubricant, placed it on her vagina, and tried to put the "fake man's privates" inside her vagina. According to A.C.'s testimony, petitioner then undid his pants, asked her to touch his penis, and put his penis in her mouth. A.C. stated that "yellow liquid" came from his privates, that he kissed her on the mouth, and that he tried to insert his penis into her vagina. A.C. also testified that there was a handgun behind petitioner on the table in the bedroom, but petitioner did not pick it up or refer to it. A.C. claimed that she attempted to tell her aunt by writing her a note (which provided: "Ed had shown me porn magazines and videos"), but, apparently, her aunt did not see the note. A.C. told the jury that when she finally informed her aunt after church, her grandfather overheard the disclosure and became upset.

Evidence established that A.C. initially reported that petitioner only showed her pornographic material and that in A.C.'s initial interview with police, she denied that petitioner touched her or that she was afraid of him. During her police interview, A.C. also asserted that she learned about sexual devices, pornography, and sex from sources other than petitioner. According to the evidence at trial, A.C. underwent a pelvic examination at Ruby Memorial Hospital in June of 2005. Two doctors, Dr. Martin Weisse (supervising pediatric doctor) and Dr. Eric Ex (resident), oversaw the examination. Dr. Ex's examination revealed no evidence of trauma and an intact hymen, which were findings Dr. Weisse reviewed and endorsed as the supervising doctor. Dr. Weisse testified at trial as to those findings. In his testimony, Dr. Weisse explained that, while their findings did not reveal evidence of sexual abuse, they likewise did not definitively exclude the possibility that such abuse occurred.

When A.C. disclosed her allegations against petitioner to her parents, she was again interviewed by police, and she underwent a second pelvic examination in the State of California.[2] During her second interview with police in January of 2006, A.C. revealed the presence of the handgun. The second pelvic examination showed notching or scar tissue on one side of A.C.'s hymen. Without objection, Dr. Weisse testified at trial as to the findings of the second pelvic examination performed in California, and, also without objection, the medical report from the second examination was admitted into evidence. Dr. Weisse claimed in his testimony that the California examination was more thoroughly performed than the West Virginia examination.

Evidence further established that petitioner admitted in a police interview that he showed A.C. pornographic magazines, but he maintained that he did so because she was curious and had asked questions about the subject. Tape recordings of petitioner acknowledging that he showed A.C. pornographic material were also recovered and admitted at trial. Petitioner denied any assault, abuse, or other touching.

At the conclusion of its deliberation, the jury found petitioner guilty of seven counts of

---

[2]A.C. had moved to California by the time of her second pelvic examination.

first-degree sexual assault (of a victim less than eleven years old); one count of sexual abuse by a parent, guardian, or custodian; and two counts of use of obscene matter to seduce a minor. He was sentenced consecutively for a total of 125 to 265 years in prison. In January of 2010, this Court refused petitioner's petition for direct appeal.

In January of 2011, petitioner filed the instant petition for writ of habeas corpus. Thereafter, petitioner was appointed counsel. In August of 2014 and September of 2015, the circuit court held two omnibus evidentiary hearings.[3] At the first hearing, petitioner's trial counsel testified that he did not recall the circumstances of his decision not to call Dr. Ex as a witness at trial or his decision not to object to the admission of evidence of the second examination on confrontation clause grounds. However, petitioner's trial counsel stated that

> There was some reason why – there was some value to that [evidence of the second examination performed in California] coming in. I can't remember what it is, too. So I was in the – I can't remember exactly why. I remember having discussions with [petitioner] about that California stuff, too. I think he wanted me to do one thing[,] and I was thinking maybe to do the opposite would be better, but I can't remember what it is, what we were talking about, but we were having discussions about it.

At the second evidentiary hearing, petitioner presented the testimony of Raymond H. Yackel, an expert witness testifying in area of criminal law proceedings. Mr. Yackel testified that petitioner's constitutional rights were violated when the report of the second examination was admitted without cross-examination of the doctors who drafted that report. Mr. Yackel also claimed that petitioner's trial counsel was constitutionally ineffective for failing to object to the admission of that medical report and to the testimony of Dr. Weisse, who according to Mr. Yackel had not prepared that report but testified as to its contents. Mr. Yackel concluded that the admission of the report of the second examination was prejudicial constitutional error because it was "critical" evidence for the prosecution.

In September of 2015, the circuit court entered an order denying petitioner's habeas petition. In that order, the circuit court found that the evidence of the second examination was both favorable and "arguably unfavorable" to petitioner. Based on the testimony of petitioner's trial counsel, the circuit court found that "it is reasonable to conclude that the discussions that occurred between the petitioner and his trial counsel about the California evidence and choosing not to object was a part of trial counsel's strategy." Therefore, the circuit court concluded that petitioner's trial counsel was not constitutionally ineffective. This appeal followed.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We

---

[3]The second omnibus evidentiary hearing appears to have been delayed by petitioner's procurement of an expert witness.

review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner's first and second assignments of error relate to the admission of medical evidence at trial in violation of his right to confront witnesses, which petitioner claims was not harmless error. Petitioner argues that the circuit court in the instant habeas action failed to find that a confrontation clause violation occurred and failed to undergo a harmless-error analysis on his confrontation clause issue. A habeas petitioner bears the burden of establishing that he is entitled to the relief sought. *See Markley v. Coleman*, 215 W.Va. 729, 734, 601 S.E.2d 49, 54 (2004) (noting that allegations must have adequate factual support for appointment of counsel, hearing, and/or issuance of writ); Syl. Pts. 1 and 2, *State ex rel. Scott v. Boles*, 150 W.Va. 453, 147 S.E.2d 486, 487 (1966) (burden in habeas proceedings rests on habeas petitioner); *Stanley v. Dale*, 171 W.Va. 192, 194, 298 S.E.2d 225, 227-28 (1982) (noting that habeas petitioner generally has burden of proving allegations by preponderance of evidence).

While petitioner's first two assignments of error rely on his assertion that a confrontation clause violation occurred, it is clear from the record on appeal that petitioner did not raise a stand-alone confrontation clause claim in his underlying habeas petition. Instead, in his habeas petition, petitioner argued solely that his trial counsel was constitutionally ineffective for failing to object to the medical evidence that he claims was admitted in violation of the confrontation clause. As such, the circuit court correctly limited its review of petitioner's habeas petition to his stated ground: whether his trial counsel was constitutionally ineffective. For that reason, we find no merit to petitioner's first two assignments of error because he failed to satisfy his burden to allege and establish those grounds in this habeas proceeding. Petitioner did not raise a stand-alone confrontation clause issue and, similarly, did not raise the related harmless-error analysis of a confrontation clause violation.

Petitioner's third and final assignment of error is that the circuit court erred in determining that petitioner was not denied the effective assistance of trial counsel. We have set forth the standard for assessing claims of ineffective assistance of counsel as follows:

> 5.      In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> 6.      In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight

4

or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 5-6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Consequently, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Moreover, we have held that "'[o]ne who charges on appeal that his . . . counsel was ineffective . . . must prove the allegation by a preponderance of the evidence.' Syllabus Point 22, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974)." Syl. Pt. 4, *State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 700 S.E.2d 489 (2010).

In this case, the circuit court denied petitioner's habeas petition on this ground because it found that his trial counsel could have decided not to object to the medical evidence for strategic purposes. Petitioner's trial counsel testified at an omnibus evidentiary hearing that he had a "reason" and there was "some value to that [evidence of the second examination performed in California] coming in" after discussing the matter with petitioner. While trial counsel could not recall his trial strategy at the time of the habeas hearing, it is notable that more than seven years passed between the time of the trial and the time of the habeas hearing. Further, as noted by the State, petitioner's defense at trial relied upon the six-month time-gap and disparate findings of the two medical examinations of the victim to call the allegations into question. The circuit court also noted that trial counsel could have made a strategic decision not to object to Dr. Weisse's testimony because it included the clearly favorable first medical examination, which showed normal results. Therefore, we cannot find that the circuit court erred in finding that petitioner's trial counsel made a strategic decision to not object to the admission of the medical evidence.

Nonetheless, assuming arguendo that petitioner is correct that the circuit court wrongly decided that trial counsel's decision was strategic, petitioner has not established the second prong of the *Strickland/Miller* test: that there was a reasonable probability that, but for counsel's failure to object to that evidence, the result of the proceedings would have been different. The record on appeal establishes that petitioner made admissions as to his exposing the victim to pornographic material and that she witnessed him masturbating, and the victim testified to the sexual abuse, sexual assault, and exposure to obscene material. If we assume trial counsel's objection would have resulted in the exclusion of the medical evidence at issue, petitioner must still satisfy his burden to prove that the outcome of the proceeding would have been different. Although petitioner's expert at the habeas hearing, Mr. Yackel, testified that the medical evidence was "critical" to the prosecution, he provided equivocal testimony on the issue of whether the outcome would have been different if the same were excluded from evidence. Mr. Yackel agreed with respondent that the victim's uncorroborated testimony was sufficient to convict petitioner of these crimes, but he later claimed that the conviction would not have occurred without the medical evidence. We have previously held that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible[;] the credibility is a question for the jury." Syl. Pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). Given the victim's testimony herein, petitioner has failed to satisfy his

burden to establish the second prong of the *Strickland*/*Miller* test that the outcome of the case would have been different if the medical evidence were excluded.

Finally, to the extent petitioner argues that trial counsel was ineffective by failing to present Dr. Ex as a witness to testify as to the first medical examination, we find no deficient performance in that decision. Dr. Ex's testimony would have been cumulative of the testimony of Dr. Weisse as to the results of the first examination. *See* W.Va. R. Evid. 403 (stating that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed . . . by considerations of . . . needless presentation of cumulative evidence"). The medical examination to which Dr. Ex would have testified, which was favorable to petitioner, was presented to the jury by Dr. Ex's supervisor, Dr. Weisse.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2016

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**CONCURRING SEPARATELY IN WRITING:**

Chief Justice Menis E. Ketchum

I agree with the result because the defendant did not raise as an error in his habeas petition that the confrontation clause of the constitution was violated. The defendant had the absolute right to confront the doctors from California.